WENDY J. OLSON, IDAHO BAR NO. 7634
UNITED STATES ATTORNEY
**ROBERT C. GRISHAM, IDAHO BAR NO. 2623**
ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF IDAHO
WASHINGTON GROUP PLAZA IV
800 PARK BOULEVARD, SUITE 600
BOISE, ID 83712-9903
TELEPHONE:  (208) 334-1211
FACSIMILE:  (208) 334-1414

      Attorneys for Defendant United States of America, by and through
      Department of Interior, Bureau of Indian Affairs


UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LILIAN JACKSON; VERONDA MOSHO, ELAINE MCKEAN; MARGIE WHITEHORSE; BLAINE JACKSON; LAVON JACKSON, SR.; LAVON JACKSON, JR.; ABIGAIL RAMSEY and DEBRA BILLY, all individuals, <br><br> Plaintiffs, <br><br> vs. <br><br> UNITED STATES OF AMERICA by and through THE DEPARTMENT OF INTERIOR, BUREAU OF INDIAN AFFAIRS; J.W. DUNFORD & ASSOCIATES, INC., an Idaho corporation; JOSEPH WILLIAM DUNFORD; ZACHARY P. MOORE and JOHN DOES 1-10, <br><br> Defendants. | Case No.  09-CV-00214-E-BLW <br><br> **MEMORANDUM IN SUPPORT OF THE UNITED STATES OF AMERICA'S MOTION FOR SUMMARY JUDGMENT** |

      COMES NOW defendant United States of America, by and through Robert C. Grisham,

Assistant United States Attorney for the District of Idaho, and hereby submits its Memorandum

in Support of the United States of America's Motion for Summary Judgment.


**MEMORANDUM IN SUPPORT OF THE UNITED STATES OF AMERICA'S
MOTION FOR SUMMARY JUDGMENT  - Page 1**

## I.   Introduction

The plaintiffs are members of the Shoshone-Bannock Tribe.  Sometime prior to August 2006, the plaintiffs decided to sell to the Tribe their interests in160 acres of Indian Trust Land referred to as Allotment 1486.  Allotment 1486 is located on the Fort Hall Reservation. Defendant J.W. Dunford & Associates ("Dunford") was retained by the U.S. Department of Interior, Office of the Special Trustee for American Indians, Office of Appraisal Services, Northwest Regional Office ("OAS") to appraise the Allotment.  The appraisal determined the highest and best use of the Allotment was "range," and it had a market value of $24,000.  OAS performed a desk review of Dunford's appraisal report, and found it to be acceptable.  Thereafter, the Tribe purchased the plaintiffs' interests in the Allotment for $26,566.77.[1]

The plaintiffs subsequently filed this lawsuit claiming Dunford's appraisal report is flawed.  According to the plaintiffs, at the time of Dunford's appraisal, the highest and best use of Allotment 1486 was "agricultural," and it had a market value of $272,000.  The complaint alleges that because of the flawed appraisal, the plaintiffs sold the Allotment for less than they could have. With respect to the United States, the complaint alleges:  (1) under the doctrine of respondeat superior, the United States is responsible for the negligence of Dunford in performing the appraisal; (2) the United States was negligent in selecting Dunford as the appraiser; (3) the United States was negligent in approving Dunford's appraisal report; and (4) the United States breached its fiduciary duties to the plaintiffs.

## II.   Statement of Undisputed Material Facts

On August 16, 2006, pursuant to 25 C.F.R. § 152.23, the plaintiffs submitted to the Bureau of Indian Affairs ("BIA") applications for the sale of their interests in Allotment 1486.

---

[1]The Tribe agreed to purchase the Allotment for $26,566.77 more than the appraisal value in order to reflect the value of life estate interests held by several of the plaintiffs.  *See* Ex. A hereto.

**MEMORANDUM IN SUPPORT OF THE UNITED STATES OF AMERICA'S MOTION FOR SUMMARY JUDGMENT  - Page 2**

(*See* Edmo Dep. at 13-15; Ex. B hereto.)  On October 3, 2006, pursuant to 25 C.F.R. § 152.24, the BIA sent a request for an appraisal to OAS.  (Graf  Decl. ¶¶ 6-8.)

In addition to the request for an appraisal, the BIA also sent to OAS a S.M.C. Resource Data Sheet ("Data Sheet").  The Data Sheet was not prepared by an appraiser; it was prepared by a technician.  The Data Sheet indicated the highest and best use of the land is agriculture.  This conclusion was from a soils perspective, not an appraisal perspective.  While the Data Sheet may assist an appraiser in determining highest and best use for appraisal purposes, it does not "establish" highest and best use for appraisal purposes.  The Data Sheet was provided to Dunford, which performed the appraisal.  (*Id.* ¶ 9.)

On November 9, 2006, OAS sent to the Department of Interior's National Business Center ("NBC") a Requisition for the appraisal of 123 Allotments, including Allotment 1486, on the Fort Hall Reservation.  Attached to the Requisition were a Scope of Work Outline and a Statement of Work.  These documents described the requirements for the appraisals, and they were provided to the prospective bidders as part of the Request for Proposals.  They then become part of the contract with the bidder who was awarded the contract, J.W. Dunford & Associates.  (*Id.* ¶¶ 10-13.)

The Scope of Work Outline also identified three potential appraisal companies.  These were appraisal companies to which OAS wanted Requests for Proposals sent.  NBC also had the discretion to send Requests to other appraisal companies.  (*Id.* ¶ 12.)

On November 27, 2006, OAS sent NBC an Amended Requisition which noted that seven additional allotment appraisals had been added to the previous Requisition, bringing the total

**MEMORANDUM IN SUPPORT OF THE UNITED STATES OF AMERICA'S MOTION FOR SUMMARY JUDGMENT  - Page 3**

requested appraisals to 130.[2]  The Amended Requisition indicated the projected budget for the appraisals of $56,000 had not changed.  (*Id.* ¶ 14.)

After NBC received bids in response to a Request for Proposals, it forwarded those bids to OAS, which then made a recommendation to NBC as to which appraisal company the contract should be awarded.  In making a recommendation to NBC, OAS considers:  (1) the amount of the bids; (2) which appraisers are familiar with the type of property to be appraised; (3) which appraisers have the geographical competency; and (4) whether the appraisers have the ability to perform the appraisal in the required time frame.  There are no specific mandatory regulations or policies governing how OAS is to weigh these factors, or how OAS is to make a recommendation.  OAS has the discretion to consider all the factors and then to recommend the appraiser it believes will do the best job for the best price.  (*Id.* ¶ 15.)

On December 7, 2006, OAS sent an Amended Requisition Transmittal to NBC advising it the low bid on the Request for 130 appraisals was $67,500, which was greater than the projected amount of $56,000.  OAS recommended that because of various factors, the low bid be accepted.  (*Id.* ¶ 16.)

On December 12, 2006, NBC prepared an Order authorizing the retention of Dunford, which submitted the lowest bid, to perform the 130 appraisals in accordance with the Statement or Work.  The contract amount was  $67, 500.  (*Id.* ¶ 17.)

On March 5, 2007, Dunford prepared an appraisal report which concluded that as of February 28, 2007, the highest and best use of Allotment 1486 was "range," and the Allotment had a market value of $24,000.  (*Id.* ¶ 18.)

---

[2]The Amended Requisition actually states the new total is 139 appraisals.  Based on the fact that the original Requisition requested 123 appraisals, the fact that the Amended Requisition indicated 7 additional appraisal requests had been added, and the fact that the Scope of Work Outline attached to the Amended Requisition reflects there were to be 130 appraisals, it can be concluded the "139 appraisals" referenced in the Amended Requisition is a typographical error, and it should have stated the new total was 130 appraisals.  (*Id.* ¶ 14.)

**MEMORANDUM IN SUPPORT OF THE UNITED STATES OF AMERICA'S MOTION FOR SUMMARY JUDGMENT  - Page 4**

On May 10, 2007, OAS performed a desk review of Dunford's appraisal.  The purpose of the review was to determine if the appraisal was written in accordance with the Uniform Standards of Professional Appraisal Practice ("USPAP") utilizing recognized methods and techniques necessary to produce a credible appraisal report.  The review also evaluated the relevance of the data cited and any adjustments made to that data, and assessed the analysis, opinions, and conclusions expressed by the appraiser.  The reviewer found Dunford's report "acceptable."  (*Id.* ¶¶ 19-20.)

On May 14, 2007, copies of the appraisal report were sent to the plaintiffs holding fee interests.  (*Id.* ¶ 21; Ex. C hereto.)

On July 26, 2007, the plaintiffs sold their interests in Allotment 1486 to the Tribe for a total amount of $26,566.77.  (Ex. D hereto.)

## III.    Arguments

### A.    The plaintiffs' negligence claims against the United States must be dismissed.

#### 1.    The independent contractor exception bars a claim against the United States based on the alleged negligence of Dunford.

The Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346; 2671 *et. seq.*, is a limited waiver of the United States' sovereign immunity.  Under the FTCA, the United States is liable to the same extent as a private party for certain torts of federal employees acting within the scope of their employment, "in accordance with the law of the place where the act or omission occurred." 28 U.S.C. §§ 1346(b)(1) and 2674.  The FTCA includes officers and employees of "any federal agency" but expressly excludes "any contractor with the United States."  28 U.S.C. § 2671.  In short, under the independent contractor exception, the United States is immune from vicarious liability.  *See Autery v. United States*, 424 F.3d 944, 956-57 (9th Cir. 2005).  Federal law determines whether an individual is a federal employee.  *Id.* at 957.

"Contractual provisions directing detailed performance generally do not abrogate the contractor exception."  *Id.*  In other words, "the ability to compel compliance with federal

regulation does not change a contractor's personnel into federal employees." *Id. quoting Letnes v. United States*, 820 F. 2d 1517, 1519 (9th Cir. 1987).  Instead, "[t]here must be substantial supervision over the day-to-day operations of the contractor in order to find that the individual was acting as a government employee." *Id.*

In the instant case, the Statement of Work (Graf Decl. ¶¶ 11-13), which became part of the contract between OAS and Dunford, provided:

> Responsibilities:
>
> The contractor is responsible for securing all pertinent market data necessary for completion of this assignment as required by the Uniform Standards of Appraisal Practice and Uniform Appraisal Standards for Federal Land Acquisitions ("The Yellow Book").
>
> The Contractor shall furnish all labor, materials, transportation, tools, operating supplies and incidentals to complete the work as specified.

It is apparent from this provision, and other provisions in the Statement of Work, that OAS did not have the right to supervise Dunford's day-to day appraisal operations.  Accordingly, Dunford was an independent contractor, and any negligence of Dunford in performing the appraisal cannot be attributed to the United States.

### 2. The discretionary function exception to the FTCA bars the plaintiffs' claim that the United States was negligent in selecting Dunford.

The FTCA includes a number of exceptions to its waiver of sovereign immunity, including the discretionary function exception.  28 U.S.C. § 2680(a).  The discretionary function exception provides immunity from suit for " [a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion be abused." *Id.* The discretionary function exception serves to insulate certain governmental decision-making from "judicial 'second guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 814 (1984).

**MEMORANDUM IN SUPPORT OF THE UNITED STATES OF AMERICA'S MOTION FOR SUMMARY JUDGMENT  - Page 6**

The Supreme Court, in *Berkovitz v. United States*, 486 U.S. 531, 536-37 (1988), set out a two-step analysis to determine whether the discretionary function exception applies in a particular case.  First, the court must determine whether the challenged actions involve an "element of judgment or choice."  *United States v. Gaubert*, 499 U.S. 315, 322 (1991).  This inquiry looks at the "nature of the conduct, rather than the status of the actor" and the discretionary element is not met where "a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow."  *Berkovitz*, 486 U.S. at 536.  If there is such a statute or policy directing mandatory and specific action, the inquiry comes to an end because there can be no element of discretion when an employee "has no rightful option but to adhere to the directive."  *Id.*

When a specific course of action is not prescribed, however, an element of choice or judgment is likely involved in the decision or action.  The court must then consider "whether that judgment is of the kind that the discretionary function exception was designed to shield"[;] namely, "only governmental actions and decisions based on considerations of public policy."  *Berkovitz*, 486 U.S. at 536-37.  Public policy has been interpreted to include decisions "grounded in social, economic, or political policy."  *Varig*, 467 U.S. at 814.  It is important to note that the decision at issue "need not be actually grounded in policy considerations . . . ."  Instead, the decision is a policy decision if it is "susceptible to a policy analysis."  *Miller v. United States*, 163 F.3d 591, 594 (9th Cir. 1998).  Further  "[w]hen established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion."  *Gaubert*, 499 U.S. at 324.

A number of courts, including the Ninth Circuit, have concluded that the selection of employees ,officials and officers typically falls within the scope of the discretionary function exception.  *See, e.g., Gaubert*, 499 U.S. at 332-34 (finding that the negligent selection of directors and officers falls within the discretionary function exception);  *Doe v. Holy See*, 557

**MEMORANDUM IN SUPPORT OF THE UNITED STATES OF AMERICA'S MOTION FOR SUMMARY JUDGMENT  - Page 7**

F.3d 1066, 1084 (9th Cir. 2009) ("We have held the hiring, supervision, and training of employees to be discretionary acts."); *Nurse v. United States*, 226 F.3d 996, 1001 (9th Cir. 2000) (holding that plaintiff's claims of "negligent and reckless employment, supervision and training of" employees "fall squarely within the discretionary function exception"); *Burkhart v. Wash. Metro. Area Transit Auth.*, 112 F.3d 1207, 1217 (D.C. Cir. 1997) (holding that "decisions concerning the hiring, training, and super[vision]" of employees are discretionary).

In *Wood v. United States*, 290 F.3d 29 (9th Cir. 2002), the court found that the discretionary function exception barred the plaintiff's claim that the Navy was negligent in selecting a lead abatement and painting contractor. *Id.* at 36-38. First, the court found that there was no specific mandatory directive limiting the Navy's discretion in choosing the contractor. *Id.* at 37. Second, the court noted that because "the exercise of official discretion implicates policy judgments," the plaintiff had the burden "of demonstrating that the Navy's conduct was not at least susceptible to policy related judgments." *Id.* at 37. The court found the plaintiff failed to make such a showing and, therefore, held that the Navy's selection of the contractor was "grounded in a broadly-based policy judgment that [the contractor] represented the 'best value' for the American taxpayer." *Id.* at 37-38.

As noted , 28 C.F.R. § 152.24 requires that an appraisal shall be made prior to the sale of Indian Trust Land. With respect to the sale of Indian Trust Land on the Fort Hall Reservation, pursuant to Section 152.24, the BIA office on the Reservation submits a Request for Real Estate Appraisal to OAS. (Graf Decl. ¶ 8.) Depending on funding and what the regional supervisory appraiser wants to do, the appraisal is done either by OAS staff or it is contracted out. (*Id.* ¶10.) OAS does not have written guidelines or policies governing the retention of appraisers. (*Id.* ¶15.) However, if the decision is made to hire an appraiser, there is a specific procedure OAS follows. (*Id.*)

OAS sends a Requisition to NBC. The Requisition may contain names of appraisers to whom OAS would like Requests for Proposals sent, but there is no requirement that any listed

**MEMORANDUM IN SUPPORT OF THE UNITED STATES OF AMERICA'S MOTION FOR SUMMARY JUDGMENT - Page 8**

appraiser be selected.  NBC then sends out Requests for Proposals to appraisal companies.

Appraisal companies which are interested in performing the appraisal then submit bids.  A list of

all appraisers who bid on the contract, together with their bids, is provided to OAS, which then

makes a recommendation to NBC as to whom the contract should be awarded.  (*Id.* ¶¶ 11-15.)

In making the decision as to which appraisal company it will recommend, OAS

considers:  the amount of the bids; which appraisers are familiar with the type of property to be

appraised; which appraisers have the geographical competency; and whether the appraisers, given

their workload, can complete the appraisal in the required time frame.  There are no specific

mandatory regulations or policies governing how OAS is to weigh these factors, or how OAS is

to make the recommendation.  OAS has the discretion to look at all factors and then to

recommend the appraiser it believes will do the best job for the best price.  (*Id.* ¶ 15.)

On December 7, 2006, OAS sent an Amended Requisition Transmittal to NBC advising it

the low bid on the Request for 130 appraisals was $67, 500, which was greater than the projected

amount of $56,000.  OAS recommended that because of various factors, the low bid be accepted.

(*Id.* ¶ 16.)

On December 12, 2006, NBC prepared an Order authorizing the letting of a contract to

the low bidder, J. W. Dunford & Associates, to perform the 130 appraisals in accordance with the

Statement of Work.  The contract amount was $67, 500.  (*Id.* ¶ 17.)

As can be seen, there is no evidence there were any specific mandatory directives limiting

OAS's or NBC's discretion in choosing an appraiser.  Further, the cited case authority and the

Declaration of Phillip E. Graf establish OAS's/NBC's selection of a contractor is susceptible to

policy related judgments.  Accordingly, the discretionary function exception bars the plaintiffs'

claim that the United States was negligent in selecting Dunford.

**MEMORANDUM IN SUPPORT OF THE UNITED STATES OF AMERICA'S
MOTION FOR SUMMARY JUDGMENT  - Page 9**

**3.      The misrepresentation exception to the FTCA bars the plaintiffs'
             claim that the United States was negligent in approving Dunford's
             appraisal report.**

The misrepresentation exception to the FTCA bars any claim "arising out of . . .

misrepresentation . . . ."  28 U.S.C. § 2680(h).  The misrepresentation exception "precludes

liability where the plaintiff suffers economic loss as a result of a commercial decision which was

based on a misrepresentation by government consisting either of false statements or a failure to

provide information which it had a duty to provide."  *Green v. United States*, 629 F.2d 581,

584-85 (9th Cir. 1980).

The exception covers actions for negligence when the basis for the negligence action is an

underlying claim for misrepresentation.  *See Mt. Homes Inc. v. United States*, 912 F.2d 352, 355

(9th Cir. 1990) (holding that plaintiff's claim for failure to communicate correct sales tax

information "is in essence an action for negligent misrepresentation"); *Leaf v. United States*, 661

F.2d 740, 742 (9th Cir. 1981) (holding plaintiff's negligence claim barred by misrepresentation

exception because the alleged false representation was "within the chain of causative events upon

which plaintiffs' claim is founded").  "It is the substance of the claim and not the language used

in stating it which controls" whether the claim is barred by the exception. *See Gaudet v. United*

*States*, 517 F.2d 1034, 1035 (5th Cir. 1975).  Thus, a plaintiff cannot circumvent the

misrepresentation exception simply through the artful pleading of its claims.  *See Mt. Homes*, 912

F.2d at 356 (analyzing whether plaintiff's claim fell within the misrepresentation exception and

explaining that "[a]lthough it has couched its complaint in terms of the breach of a duty to

prepare the documents adequately, we look beyond the characterization to the conduct on which

the claim is based").

In *United States v. Neustadt*, 366 U.S. 696 (1961), the Supreme Court addressed the

applicability of the misrepresentation exception to a claim alleging negligence in the preparation

of an appraisal.  There, the purchaser of a home relied on an appraisal made by the Federal

Housing Administration ("FHA") for mortgage insurance purposes.  After moving into the

**MEMORANDUM IN SUPPORT OF THE UNITED STATES OF AMERICA'S
MOTION FOR SUMMARY JUDGMENT  - Page 10**

house, the purchasers discovered serious structural defects which had not been noticed by the FHA during the course of its inspection, and which rendered the house's fair market value substantially lower than the FHA appraised value.  The purchaser sued the government alleging that the FHA had negligently inspected and appraised the property, and that he had justifiably relied on the appraisal in purchasing the house.  The Supreme Court rejected the Fourth Circuit's finding that the misrepresentation was " 'merely incidental' to the 'gravamen' of the claim, i.e., 'the careless making of an excessive appraisal . . . .' "  *Id.* at 704 (*quoting United States v. Neustadt*, 281 F.2d 596, 602 (4th Cir. 1960)).  The court reasoned the argument that the breach of the FHA's specific duty to "use due care in obtaining and communicating information upon which [the] party may reasonably be expected to rely in the conduct of his economic affairs, is only to state the traditional and commonly understood legal definition of the tort of 'negligent misrepresentation . . . .' "  *Neustadt*, 366 U.S. at 706.  The court concluded that the purchaser's claim stemming from the gathering and communicating information in the inaccurate appraisal constituted a claim for negligent misrepresentation which was consequently barred by the misrepresentation exception.  *Id.* at 706-11.

The instant case is virtually indistinguishable from *Neustadt*.  OAS approved Dunford's appraisal, and as a result of the approval, the appraisal was sent to the plaintiffs holding fee interests in the Allotment.[3]  In essence, the approval constituted a representation by OAS as to the value of the land.  Thus, the plaintiffs' claim that OAS was negligent in approving the appraisal is, in reality, a negligent misrepresentation claim which is barred by the misrepresentation exception.

---

[3]There is no evidence the appraisals were sent to or relied upon by the plaintiffs holding life estate interests.  Therefore such plaintiffs have arguably failed to state a claim.

**MEMORANDUM IN SUPPORT OF THE UNITED STATES OF AMERICA'S MOTION FOR SUMMARY JUDGMENT  - Page 11**

4.      **There is no evidence supporting the plaintiffs' negligence claims.**

a.      **Dunford's alleged negligence.**

The plaintiffs' complaint alleges Dunford was negligent in that it "failed to recognize fundamental and basic attributes of the Property and, thus, grossly undervalued the Property in the appraisal report."  (Pls.' Compl. ¶¶ 15 and 22.)  There is no evidence in the record to support this allegation.  The plaintiffs have disclosed an appraisal report prepared by their expert John S. Chidester.  (Ex. E hereto.)  Although Dunford concluded the highest and best use of the Allotment was "range," Chidester concluded the highest and best use of the Allotment was "agricultural," and it had a fair market value of $272,000, as opposed to Dunford's appraisal which concluded the fair market value was $24.000.  The difference of opinion regarding the highest and best use of the Allotment accounts for the different appraisal amounts.

Although Chidester apparently disagrees with Dunford's determination of the highest and best use, his report does not state, or even infer, that Dunford was negligent in its approach to determining the highest and best use.  Thus, the only "evidence" of negligence in the record is a disagreement between two appraisers as to the Allotment's highest and best use.  Such a "disagreement" is not evidence of negligence; two reasonable appraisers can certainly reach two different conclusions regarding highest and best use.

In addition, the Statement of Work, which was part of OAS's contract with Dunford, provided the appraisal must conform to Uniform Standards of Professional Appraisal Practice ("USPAP") and the Uniform Appraisal Standards for Federal Land Acquisitions ("The Yellow Book").  There is no evidence that in performing the appraisal, Dunford did not comply with either of these publications.

b.      **OAS's alleged negligence in approving Dunford's report.**

Not only is there no evidence that Dunford was negligent in performing the appraisal, there is also no evidence that OAS had any reason to believe, based on its desk review of Dunford's appraisal report, that the report contained flaws.

**MEMORANDUM IN SUPPORT OF THE UNITED STATES OF AMERICA'S MOTION FOR SUMMARY JUDGMENT  - Page 12**

### c.    OAS's/NBC's alleged negligence in selecting Dunford as the appraiser.

There is no evidence in the record that OAS, or NBC, had any reason to believe Dunford was not qualified to perform the appraisal.

### B.    The plaintiffs' fiduciary duty claim must be dismissed.

#### 1.    This court lacks jurisdiction over the plaintiffs' breach of fiduciary duty claim.

A claim based on the federal government's trust obligation seeking money damages is enforceable only in the United States Court of Federal Claims through the Tucker Act, 28 U.S.C. § 1491, or the Indian Tucker Act, 28 U.S.C. § 1505.  *See United States v. Navajo Nation*, 129 S. Ct. 1547, 1551-52 (2009); *Marceau v. Blackfeet Housing Auth.*, 540 F.3d 916, 922  n.3 (9th Cir. 2008) ("A cognizable claim that rests on the federal government's trust obligation is enforceable through the Tucker Act, 28 U.S.C. § 1491, or the Indian Tucker Act, 28 U.S.C. § 1505").[4]

#### 2.    The plaintiffs have not stated a claim under the Tucker Act or the Indian Tucker Act.

Although, in general, a trust relationship exists between the United States and Indian Nations, that relationship, standing alone, does not grant a cause of action for money damages. *See Marceau*, 540 F.3d at 921-22.  Instead, in order to invoke jurisdiction under the Tucker Act or the Indian Tucker Act, tribal members must do two things.  First, they "must identify a substantive source of law that establishes specific fiduciary or other duties, and allege that the Government has failed to faithfully perform those duties."  *Navajo Nation*, 129 S. Ct. at 1552, *quoting United States v. Navajo Nation*, 537 U.S. 488, 506 (2003) (*Navajo I*); *Marceau*, 540 F.3d at 921-24.  Second, if the members identify such a substantive source, "the court must then

---

[4]The Little Tucker Act, 28 U.S.C. § 1346(2), grants District Courts concurrent jurisdiction over such claims if the amount sought does not exceed $10,000.  In this case, the plaintiffs are seeking in excess of $10,000.  Therefore, the Little Tucker Act does not provide a basis for jurisdiction in this court.

**MEMORANDUM IN SUPPORT OF THE UNITED STATES OF AMERICA'S MOTION FOR SUMMARY JUDGMENT  - Page 13**

determine whether the relevant source of substantive law 'can fairly be interpreted as mandating compensation for damages sustained as a result of a breach of the duties [the governing law] impose[s].'" *Ibid.* (alteration in original).  *Navajo Nation*, 129 S. Ct. at 1552.  The plaintiffs in this case have not satisfied either requirement.

## IV.    Conclusion

For the reasons stated herein, the claims alleged against the United States in the plaintiffs' complaint should be dismissed in their entirety.

RESPECTFULLY SUBMITTED this 29th day of October, 2010.

WENDY J. OLSON
UNITED STATES ATTORNEY


/s/ Robert C. Grisham
ROBERT C. GRISHAM
Assistant United States Attorney

**MEMORANDUM IN SUPPORT OF THE UNITED STATES OF AMERICA'S MOTION FOR SUMMARY JUDGMENT  - Page 14**

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 29th day of October, 2010, the **Memorandum in Support of United States of America's Motion for Summary Judgment** was electronically filed with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following person(s):

Dwight E. Baker
BakerHarrisLaw@cableone.net

Jonathan W. Harris
Jwharris@bakerharrislaw.com

Phillip J. Collaer
pcollaer@ajhlaw.com

And, I hereby certify that the following listed non-registered CM/ECF participants were served by:

☐ United States Mail, postage prepaid
☐ Federal Express
☐ Hand-delivery
☐ Facsimile transmission (fax)

/s/ Janis Malm
Janis Malm
Legal Assistant

**MEMORANDUM IN SUPPORT OF THE UNITED STATES OF AMERICA'S MOTION FOR SUMMARY JUDGMENT  - Page 15**