Phillip J. Collaer, ISB No. 3447
ANDERSON, JULIAN & HULL LLP
C. W. Moore Plaza
250 South Fifth Street, Suite 700
P. O. Box 7426
Boise, ID 83707-7426
Telephone: (208) 344-5800
Facsimile: (208) 344-5510
E-mail: pcollaer@ajhlaw.com

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LILIAN JACKSON; VERONDA MOSHO, ELAINE MCKEAN; MARGIE WHITEHORSE; BLAINE JACKSON; LAVON JACKSON, JR.; LAVON JACKSON, JR.; ABIGAIL RAMSEY and DEBRA BILLY, all individuals, <br><br> Plaintiff, <br><br> vs. <br><br> UNITED STATES OF AMERICA by and through THE DEPARTMENT OF INTERIOR, BUREAU OF INDIAN AFFAIRS; J.W. DUNFORD & ASSOCIATES, INC., an Idaho corporation; JOSEPH WILLIAM DUNFORD; ZACHARY P. MOORE and JOHN DOES 1-10, <br><br> Defendants. | Case No. CV09-214 <br><br> MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

This case involves the sale of land on the Fort Hall Reservation. The plaintiffs, Lillian Jackson, Veronda Mosho, Elaine McKean, Margie Whitehorse, Blaine Jackson, Lavon Jackson, Jr., Abigail Ramsey, and Debra Billie (sellers) sold a 160 acre parcel of

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 1**

land to the Bureau of Indian Affairs (BIA). Defendant J.W. Dunford and Associates, Inc., (Dunford) was hired by the BIA to appraise the property. The appraisal company is owed by Joseph Dunford. At that time of the appraisal, Zachary Moore worked for the company.

In the Complaint, the plaintiffs' allege the Dunford appraisal was not performed in a reasonable or appropriate fashion; (Count One) and that the plaintiffs were third party beneficiaries to the contract between the BIA and Dunford wherein Dunford was hired to appraise their land. (Count Three)

In the sections below, the Dunford defendants will establish the plaintiffs were not third party beneficiaries to the contract between the appraisal company and the BIA. The contract identifies the client as the BIA and, specifically states the appraisal report will not be used for any purpose by anyone other than the client without the previous written consent of the appraiser and the client. Defendants will also establish the negligence claims are without merit as plaintiffs are attempting to litigate a claim for negligence as a breach of contract or alternatively are pursuing a claim based upon negligent misrepresentation. Additionally, defendants did not breach any legal duty owed to the plaintiffs. Finally, the plaintiffs' negligence claims are barred by the economic loss rule.

I.

## THE SELLERS WERE NOT THIRD PARTY BENEFICIARIES TO THE CONTRACT BETWEEN DUNFORD AND THE BUREAU OF INDIAN AFFAIRS

In November of 2006, J.W. Dunford and Associates, Inc. was awarded a bid to conduct appraisals on various parcels located on the Fort Hall Reservation. **See** Oral Deposition of Joe Dunford, p. 38:25-40:19; Deposition exhibits 17 and 18. The bid required a fair market value appraisal for some properties, and a fair rental value appraisal for others. **See** Oral Deposition of Joe Dunford, p. 46:6-16. The Jackson property was

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 2**

included in the contract between Dunford and the BIA. **See** Oral Deposition of Zachary Moore, p. 23:22-24:6; deposition exhibit 17. Mr. Moore and Mr. Dunford personally inspected the Jackson property as part of the appraisal process. **See** Oral Deposition of Zach Moore, p. 87:18-22; **See** Oral Deposition of Joe Dunford, p. 55:16-56:11. **See also** deposition exhibit 6, p 7. Based upon available data, an appraisal report was created and sent to the BIA offices in Portland. **See** Oral Deposition of Joe Dunford, p. 68:4-8; deposition exhibit 6. The appraisal report was then reviewed by an independent appraiser, Ken Carmack. **See** Oral Deposition of Phil Graf, p. 26:9-19; deposition exhibit 25. **See also** Oral Deposition of Joe Dunford, p. 68:19-69:16. Mr. Carmack's review concluded the Dunford appraisal complied with the Uniform Standards of Professional Appraisal Practice (USPAP). He recommended the appraisal be accepted by the BIA. **See** deposition exhibit 25, p. 2-3. The Dunford expressed an opinion of fair market value of $24,000. **See** deposition exhibit 6, p. 5

Plaintiffs' acknowledge they did not hire Mr. Dunford. **See** Oral Deposition of Lillian Jackson, p. 59:7-18. Plaintiffs have never met either Mr. Dunford or Zachary Moore. *Id.*, p. 58:16-22. Plaintiffs understand Dunford was hired by the BIA. *Id.* p. 59:23-25, and recognize Dunford was not working for the Jackson family. *Id.*, p. 60:14-15. Finally, the plaintiffs' acknowledge neither Dunford or Moore sent them a copy of the appraisal report. *Id.*, p. 60:18-23. Plaintiffs admit they did not see the appraisal report until after they sold the property to the tribe. *Id.*, p. 63:6-64:8. For that reason, the plaintiffs did not rely on the appraisal report when they decided to sell the property. *Id.*

The ability of a party to enforce a contract to which it is not a signatory is controlled by Idaho Code § 29-102 which reads:

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 3**

> The contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescinded.

The test to determine whether a contract is intended to benefit a third party is dependant upon the language of the disputed agreement. *See Stewart v. Arrington Constr. Co.*, 92 Idaho 526, 446, P.3d 895 (1968). "The contract itself must express an intent to benefit the third party. This intent must be gleaned from the contract itself unless the document is ambiguous, whereupon the circumstances surrounding its formation may be considered." *See Adkison Corp. v. American Bldg. Co.*, 107 Idaho 406, 409, 690 P.2d 341, 344 (1984).

In *Partout v. Harper*, 145 Idaho 683, 183 P.3d 771 (2008) the plaintiff, Lonnie Partout, purchased a home which was financed by the Department of Veterans Affairs. (VA). As part of the financing process, the V.A. hired Ron Harper to conduct an appraisal. Partout alleged the appraisal included an inspection and that Harper failed to locate and disclose various deficiencies. Partout sued Harper for breach of contract, violations of the Idaho Consumer Protection Act, and fraud. The district court granted summary judgment on all claims. On appeal, Partout argued he was a third party beneficiary of the contract between Harper and the V.A. This argument was rejected by the Idaho Supreme Court. The court stated the essential elements to support a third party beneficiary claim is whether the disputed contract reflects an intent to benefit the third party. *Id.* at 687. This requires the third party to establish the contract was made primarily for his benefit . The fact the third party, Partout was an incidental beneficiary to the contract was insufficient. *Id.* at 668. The court noted that the assignment letter retaining Harper did not express any intent to benefit Partout. *Id.* Because Partout failed to show the agreement between Harper and the V.A. had expressed an intent to benefit him, his third party beneficiary claim failed.

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 4**

In this case, the "Statement of Work", which was part of the contract between the BIA and Dunford, identifies the client by stating:

> **Identification of the Client**: The client is the Bureau of Indian Affairs (BIA). Other intended users are the Office of Special Trustee for American Indians (OST), Office of Appraisal Services (OAS) and the Fort Hall Agency.

*See* Deposition of Joe Dunford, p. 40:8-13; deposition exhibit 17, p. 2. The same document describes confidential information as follows:

> **Confidential Information**: The contractor agrees that any reports and conclusions supplied under this contract are for the exclusive use of the U.S. government. No disclosure is allowed of any conclusions, in whole or in part, to any persons other than representative of the Office of Appraisal Services, Regional Director of the Bureau of Indian Affairs and staff of the office of National Business Center.

*Id.*, p. 3. The Appraisal Report authored by Dunford is consistent with the statement of work document as it identifies the client as the BIA and the OST-Office of Appraisal Services. *See* deposition exhibit 6, p. 5. At page 12 of the Appraisal Report, Dunford states:

> 10. The appraisal will not disclose the contents of the Appraisal Report except as provided for in the Uniform Standards of Professional Practice.
>
> 11. Neither all or any portion of the contents of this report, or copy thereof, shall be used for any purpose by anyone but the client, without the previous written consent of the appraiser and the client. ...

*See* deposition exhibit 6, p. 12. These documents fail to identify or refer to the Jackson family in any respect. The scope of work materials unambiguously identify Dunford's client as the Bureau of Indian Affairs. Dunford was prohibited from

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 5**

providing any information, including the conclusion of value, to anyone other than the client without first receiving approval to make such a disclosure. This would include the Jacksons which explains why they were not provided a copy of the appraisal by Dunford. Finally, the appraisal report signed by Mr. Dunford specifically stated the report could not be utilized by anyone other than the client without the written consent of both Mr. Dunford and the BIA.

Based upon the foregoing, plaintiffs' third party beneficiary claims must fail. Consistent with the conclusions of the Idaho Supreme Court in *Partout v. Harper*, supra, the contract between Dunford and the BIA fails to reflect an intent to benefit the Jackson family. Instead, the report was, at all times, to be utilized by the BIA. Because the plaintiffs were not third party beneficiaries to the contract between the BIA and Dunford, all claims set forth in Count Three of the Complaint must be dismissed.

II.

## CLAIMS AGAINST PARTIES PROVIDING PROFESSIONAL SERVICES CONSTITUTE PROFESSIONAL MALPRACTICE CLAIMS RATHER THAN LIABILITY FOR BREACH OF CONTRACT

In addition to the fact that there is no factual support for a breach of contract claim,[1] the Court should find that the only cause of action against Defendant Dunford must be based on tort principles, not contract. All of the actions undertaken by Defendant Dunford

---

1 The contract between the BIA and Dunford required defendants to provide an appraisal that complied with USPAP and the Uniform Appraisal Standard for Federal Land acquisitions (yellow book). *See* deposition, exhibit 17, p. 1. The Dunford appraisal was subjected to a desk review by BIA appraiser Ken Carmack. *See* Oral Deposition of Phil Graf, p. 26:9-19, deposition exhibit 25. Mr. Carmack concluded the Dunford appraisal met USPAP standards. He recommended it be accepted by the BIA. *See* deposition exhibit 25, p. 2-3. This evidence demonstrates Dunford met all terms of his contract with the BIA.

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 6**

were in the course of, and in connection with, the preparation of the appraisal submitted to the BIA. The crux of Plaintiffs' claims against Dunford is that he allegedly failed to perform his professional appraisal services properly. Although Plaintiffs have attempted to craft one of their causes of action as breach of contract, their claims are actually founded upon professional negligence. Plaintiffs' breach of contract claim should be treated as a negligence action.

Idaho law recognizes that claims against professionals for acts or omissions committed while rendering professional services are tort claims not a breach of contract. In **Trimming v. Howard**, 52 Idaho 412, 16 P.2d 661 (1932), the plaintiff sued for breach of contract. The defendant argued the suit was based on professional malpractice or negligence. *Id.*, at 662. The plaintiff alleged the defendant had contracted to provide medical treatment and in doing so, agreed to exercise reasonable care in the performance of his services. *Id*. Plaintiff further alleged that the defendant breached the contract by failing to perform professional services in a careful manner. Concluding the plaintiffs' claims were not based on breach of contract, the Court determined that because the gist of the action was an alleged breach of a duty of professional performance, the plaintiffs' claims were actually a cause of action for malpractice. *Id*. See also *Ogle v. DeSano*, 107 Idaho 872, 693 P.2d 1074 (Ct App. 1985) (where the gist of the plaintiffs' claims are professional malpractice the claims are compensable in tort, not contract); **Nerco Minerals Co. v. Morrison Knudsen**, 140 Idaho 144, 90 P.3d, 894 (2004), (a claim is properly characterized as professional malpractice if the defendant was providing professional services when the service contract was allegedly breached. See 140 Idaho at 899).

Plaintiffs' claims for breach of contract are based upon Dunfords preparation of the appraisal for the BIA. Plaintiffs have never alleged that Dunford failed to perform the

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 7**

appraisal. Their entire claim is based upon allegations of professional malpractice. For that reason, the breach of contract claim in Count One of the Complaint, should be treated as a professional malpractice or negligence action.

## III.

## NEGLIGENCE CLAIMS

Plaintiffs allege the Dunford appraisal report was flawed, arguing the highest and best use of the land should have been irrigated farmland, rather than range, which would have resulted in a higher appraised value. **Complaint**, ¶¶ 14-15. Plaintiffs' tort claims should be dismissed as the factual allegations constitute negligent misrepresentation and seek non-recoverable economic losses in tort. Finally, Plaintiffs have failed to establish the breach of a duty owed to them in tort or that any of Defendant's actions were the proximate cause of their alleged damages.

### A.   Plaintiffs' Negligence Claim alleges Negligent Representation

In the Complaint, plaintiffs assert that Dunford, through the appraisal report, misrepresented their property as range. Negligent misrepresentation is defined in the Restatement as follows:

> "§ 552. **Information Negligently Supplied for the Guidance of Others**
>
> (1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their *justifiable reliance* upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

**Restatement (Second) of Torts § 552.** (emphasis added). Except in the narrow confines of a professional relationship involving an accountant, the tort of negligent misrepresentation is not recognized in Idaho. **See Duffin v. Idaho Crop Imp. Ass'n**, 126

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 8**

Idaho 1002, 895 P.2d 1195 (1995); **See also *Mannos v. Moss***, 143 Idaho 927, 155 P3d 1166 (2007). This case does not involve an accounting dispute and the Dunford defendants are not accountants.

Defendants maintain the Dunford appraisal report was accurate and met USPAP standards. However, Dunford cannot be held liable, for negligently misrepresenting facts or conclusions in the appraisal report. On that basis, Plaintiffs' negligence claims should be dismissed.

### C.    The Economic Loss Rule Bars Recovery

Even if Plaintiffs' tort claims were not based upon negligent misrepresentation, their damages are economic in nature. Generally, a plaintiff cannot recover economic losses through a negligence action. **See *Justs v. Arrington Constr. Co., Inc.*,** 99 Idaho 462, 583 P.2d 997 (1978); ***Clark v. International Harvester Co.,*** 99 Idaho 326, 581 P.2d 784 (1978). In the absence of privity of contract, "there is no ... duty to exercise reasonable care to avoid intangible economic loss or losses to others that do not arise from tangible physical harm to persons and tangible things." Prosser & Keeton, **Handbook on the Law of Torts** (5th Ed. 1984) 657, § 92; see also ***Duffin v. Idaho Crop Imp. Ass'n***, 126 Idaho 1002, 895 P.2d 1195 (1995) (a party generally owes no duty to exercise due care to avoid purely economic loss); ***Tusch Enters. v. Coffin***, 113 Idaho 37, 41, 740 P.2d 1022, 1026 (1987) (defending the rule that "purely economic losses are not recoverable in negligence"); ***Clark v. International Harvester Co.,*** 99 Idaho at 336 (a defendant owes no duty, in tort, to prevent economic loss to another).

Other jurisdictions have similarly held that professionals owe no duty of care to third parties with whom they had no contractual relationship. See, e.g., ***Fleischer v. Hellmuth***, 870 SW2d 832 (Mo. 1993) ("The general common law rule is that a defendant who has

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 9**

contracted with another owes no duty to a plaintiff who was not party to the contract, nor can that plaintiff sue for the negligent performance of that contract."); **Floor Craft Covering, Inc. v. Parma Community General Hospital Assoc.**, 560 NE2d 206 (Ohio 1990)(in the absence of privity of contract no cause of action exists in tort to recover economic damages against professionals); **Goldman v. A/R/C Associates, Inc.**, 543 So.2d 1268 (Fla. 1989) (defendant experts owed no duty of care to subcontractor for alleged negligence in preparation of roofing reports since there was no privity of contract between experts and subcontractor); **Bryant Elec. Co. v. Fredricksburg**, 762 F.2d 1192 (4th Cir. 1985) (no cause of action in tort exists for a contractor to recover against architectural and engineering firm for economic loss in the absence of privity).

The exceptions to the economic loss rule are situations where (1) a special relationship exists between the parties, or (2) unique circumstances exist which require a reallocation of the risk. **See Justs**, 99 Idaho at 470. A special relationship arises "where the relationship between the parties is such that it would be equitable to impose such a duty." **See Duffin** 126 Idaho at 1008. In **Aardema v. U.S. Diary Systems, Inc.**, 147 Idaho 785, 215 P.3d 505 (2009), the court analyzed the special relationship exception by noting it "…is an extremely narrow exception which applies only in limited circumstances." **See** 147 Idaho at 692. The court noted that its prior rulings had found a special relationship in factually specific cases where a professional or quasi professional performs professional services or, where an entity holds itself out to the public as having expertise regarding a specialized function and, induces reliance upon its performance of that function. **See** 147 Idaho at 792. However, the application of the exceptions are limited in scope and dependant upon a legally recognized relationship existing between the plaintiff which the plaintiff relied upon.

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 10**

In ***Graefe v. Vaughn***, 132 Idaho 349, 972 P.2d 317 (Ct. App. 1999), the court addressed the special relationship exception in a claim involving alleged professional malpractice by a real estate broker. Plaintiffs' claim was dismissed as the fiduciary duties owed by a real estate agent flowed only to his or her principal. ***Id.***, p. 351. Because the plaintiff was not represented by the broker, a special relationship did not exist. Because the plaintiffs' sought economic losses, the negligence claims were barred by the economic loss rule.

A similar conclusion was reached in ***Blahd v. Richard B. Smith, Inc.***, 141 Idaho 296, 108 P. 3d 996 (2005) where the plaintiffs bought a house on a hillside and later discovered the ground beneath the home was settling causing damage to the structure. They sued the developer of the subdivision and, two engineering firms which had been hired by the developer. The court dismissed the negligence claims concluding that while the developer could arguably be considered a quasi professional, there was no evidence suggesting the developer had performed a professional service for the plaintiffs or had held itself out as having special or unique expertise which the plaintiffs relied upon. The court reached a similar conclusion with respect to the engineering firms hired by the developer to provide geotechnical services to determine whether the building lots were adequate for residential construction. Because the record lacked evidence suggesting the plaintiffs relied upon or were even aware of the engineering firm's services , the special relationship exception did not apply. <u>See</u> 141 Idaho at 301-302.

In this case, the entire dispute focuses upon the plaintiffs' contention the Tribe paid an inadequate price for their property. As damages, Jacksons seek the difference between the value they contend they should have received and, the monies actually paid. These are economic losses which, absent the existence of a special relationship between the

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 11**

plaintiffs and Dunford, cannot be recovered in a negligence action. **See *Duffin v. Idaho Crop Imp. Ass'n.*,** 126 Idaho at 1007.

Consistent with the holdings in ***Graefe v. Vaughn*** and ***Blahd v. Richard B. Smith, Inc.*,** a special relationship did not arise between Dunford and the Jackson family. It is undisputed the Jacksons did not hire Dunford. **See** Oral Deposition of Lillian Jackson, p. 59:7-18; deposition exhibit 17. Instead, Dunford's client was the BIA. Pursuant to the contract between Dunford and the BIA, the defendants were not allowed to provide any information, including their opinion of value, to anyone other than the BIA. **See** deposition exhibit 17, p. 2. It is undisputed the Jacksons did not see the appraisal report until after they sold their property to the BIA. **See** Oral Deposition of Lillian Jackson, p. 63:6-64:8. These facts establish the lack of a special relationship between Dunford and the Jackson family. As admitted by the Jackson family, because they had not seen the Dunford appraisal, they did not rely upon it when they made the decision to accept the BIA's offer. **See** Oral Deposition of Lillian Jackson, p. 63:6-64:8. This is the same situation which caused the Idaho Supreme Court, in ***Blahd v. Richard B. Smith, Inc.*** to conclude a special relationship did not exist between the plaintiff and the developer or, the geotechnical engineers who had inspected the soil on the building lot at issue in that case. Because the plaintiffs' injuries are economic losses, their negligence claims must be dismissed pursuant to the economic loss rule.

### D.  Defendant did not Owe or Breach a Duty of Care to Plaintiffs

Beyond the application of the economic loss rule, it is clear that Defendant Dunford had absolutely <u>no relationship</u> with Plaintiffs in connection with the appraisal work performed for the BIA. Plaintiffs did not employ, retain, or pay for the appraisal services provided by Defendant Dunford to the BIA, and Plaintiffs never entered into any oral or

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 12**

written contracts with Dunford . *Lillian Jackson Deposition*, pp. 58:16-25; 59:1-25; 60:11-23.

Tort liability cannot exist unless the defendant owes a legal duty to the plaintiff. **Udy v. Custer County**, 136 Idaho 386, 389, 34 P.3d 1069 (2001); **Vickers v. Hanover Const. Co.**, 125 Idaho 832, 835, 875 P.2d 929 (1994), citing **Bowling v. Jack B. Parsons Cos.**, 117 Idaho 1030, 1032, 793 P.2d 703, 705 (1990); **Hudson v. Cobbs**, 118 Idaho 474, 498, 797 P.2d 1322, 1346 (1990) (holding that a fundamental component of a negligence claim is the existence of a duty toward another). The question of whether a duty exists is a question of law for the court. **Udy**, *supra*; **Turpen v. Granieri**, 133 Idaho 244, 985 P.2d 669 (1999).

In cases where a governmental agency procures and/or orders an appraisal in support of a real estate transaction, courts have held that the appraiser does not owe a duty to the third party buyer or seller. In **Gay v. Broder**, 109 Cal.App.3d 66, 75, 167 Cal.Rptr. 123 (Ct.App. 1980), the plaintiff contended he was a third party beneficiary to the contract between the defendant appraiser and the Department of Veteran's Affairs (VA), which had ordered the appraisal. The defendant, Broder, prepared an appraisal report at the request of the VA. The court recognized that the appraisal was prepared to safeguard the federal government from responsibility upon its guarantee by reason of inadequate security. *Id.*, at 72.

The **Broder** Court also noted the lack of privity of contract between the plaintiff and the defendant appraiser. In specifically addressing the issue of whether the defendant appraiser owed a duty to the plaintiff to exercise reasonable care in the conduct of the appraisal, the court concluded the appraiser's duty ran only to the VA, stating that "the duty of the designated fee appraiser is to submit to the administration an appraisal of value

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 13**

consonant with what he believes is the actual reasonable value of the property." *Id.* at 73. The court further expressed its concern that recognizing claims against the appraiser for refusing to set a value as desired by the applicant veteran would deter appraisers from reporting to the V.A. his or her true opinion and would tend to cause the appraiser to breach their duty to the federal government, the entity that had originally requested their services. *Id.* at 75.

In ***Baker v. Surman***, 361 NW2d 108, 111 (Ct.App. Minn. 1985), the court held that, as a matter of law, an FHA appraiser's legal duty is owed only to the federal government that returned its services. *Id.* The court went on to state:

> [T]he buyer cannot rely upon an FHA appraisal as a warranty of the value or condition of the home. The primary and predominant objective of the FHA appraisal system is the protection of the government and its insurance funds. The mortgage insurance funds do not insure anything other than the prepayment of loans made by lender mortgages. The legislative history of the program makes it clear that Congress did not establish a duty of care for the benefit of mortgagors. In the absence of such a duty, home buyers cannot recover damages for negligent appraisal from the federal government or an appraiser employed by the government.

*Id.*; see also, ***Emmons v. Brown***, 600 NE2d 133 (Ct.App. Ind. 1992) (FHA appraiser owed no duty of care to plaintiff buyer in conducting appraisal); ***Rogers v. Thomas***, 1994 WL 228685 (Ct.App. Tenn. 1994) (defendant VA appraiser owed no duty to plaintiff who sought financing for home purchase from VA).

In the case of a governmental agency such as the BIA, that procures its own appraisal as part of its business activities, whether it be to provide a loan, guarantee a loan, or to purchase real property, the agency's appraiser serves only the agency's interests. In the present case, there was never a professional relationship between Plaintiffs and Defendant Dunford. Dunford contracted with the BIA, not Plaintiffs. For that reason, no duty was owed to Plaintiffs.

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 14**

### E. Defendant's Preparation of an Appraisal Report for the BIA did not Cause Plaintiffs to Suffer any Damages

In order to establish negligence and/or professional malpractice, plaintiffs must prove (1) a duty, recognized by law, requiring the defendant to conform to a certain standard of conduct; (2) a breach of that duty; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual loss or damage." **Nation v. State,** 144 Idaho 177, 189, 158 P.3d 953, 965 (2007). In this case, plaintiffs cannot establish a causal connection between any alleged deficiencies in the appraisal report and the damages they are seeking.

#### 1. Plaintiffs did not rely on the Report

In the Complaint, plaintiffs allege defendants actions caused their damages. Plaintiffs allege they relied upon deficient information provided in the appraisal report in deciding to sell the property at issue to the Tribe for the amount offered. See **Complaint,** ¶ 17. However, Jackson's deposition testimony contradicts the allegations in the Complaint. It is undisputed Jackson never received a copy of the appraisal report until after the sale was completed and has now admitted the family did not rely on its contents. **Lillian Jackson Deposition**, p. 60:18-23; 63:6-9, 24-25; 64:1-8. See also deposition, exhibit 1, p. 4. Without evidence establishing plaintiffs made a decision to sell the land based on their reliance on the appraisal report, they cannot establish the defendants' actions were the proximate cause of their damages.

#### 2. The Tribe would not have agreed to purchase undeveloped land as an irrigated farm

The appraisal report cannot, as a matter of law, constitute a cause of damages to plaintiffs since plaintiffs have testified that they do not disagree with the factual basis for its conclusion. Although Plaintiffs suggest their property should have been appraised as farm

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 15**

land, their own testimony establishes there is no dispute that, at the time the Dunford appraisal was performed, the land was growing natural vegetation, and had not been utilized for any agricultural purpose in over 20 years. **Deposition of Lillian Jackson**, pp. 21:19-25; 22:1-6, 31:10-22; 32:9-20; 33:16-18; 39:4-25; 40:1; 69:1-25; 70:3-9

Jackson has acknowledged the Dunford appraisal accurately states that, at the time of sale, the land had not been farmed in over twenty years, was not enclosed by any fencing, had not been irrigated or used to graze cattle in over twenty years, and had no electricity to the well. <u>See</u> Lillian Jackson deposition, p. 68:21-70:9.

Plaintiffs have also admitted that, at the time of sale, a considerable amount of work and money that would be needed to return the land to a farmable condition. **Lillian Jackson Deposition**, p. 70:20-25; 71:1-6. <u>**See also Deposition**</u> **of Sam Hernandez**, pp. 24:4-25. Plaintiffs did not have the financial resources to install an irrigation system or have power extended to the property. **Lillian Jackson Deposition**, p. 102:5-11; **Veronda Mosho Deposition**, p. 46:2-16.

The importance of these undisputed facts is the lack of a causal connection between the allegedly deficient appraisal report and, the plaintiffs' damages. In order to recover, the plaintiffs must establish the BIA, and the Tribe would have agreed to purchase the property based upon a price that valued their 160 acre parcel as a developed irrigated farm. Ironically, Lillian Jackson testified she would not agree to pay that price. <u>See</u> Oral Deposition of Lillian Jackson, p. 71:7-16. More importantly, the Tribe would not have agreed to pay a purchase price consistent with an irrigated farm which, did not have a functioning irrigation system, had not been cultivated from native vegetation, and did not have a functioning well to irrigate the property. <u>See</u> Oral Deposition of Marge Edmo, p. 34:25-35:22. These facts establish the lack of any causal connection between the alleged

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 16**

deficiencies in the Dunford appraisal report and, the plaintiffs' claims.

Proximate cause consists of two elements: (1) cause and fact or actual cause and, (2) scope of legal responsibility. **See Doe v. Sisters of the Holy Cross,** 126 Idaho 1036, 1039, 895 P.2d 1229, 1232 (Ct. App. 1995). Cause in fact or actual cause is the factual question of whether a particular event produced a particular consequence. **See Newberry v. Martens**, 142 Idaho 184, 288, 127 P.3d 187, 191 (2005). In contrast, legal cause, or the scope of legal responsibility focuses upon whether legal policy supports responsibility being "extended to the consequences of the conduct ... it determines whether liability for that conduct attaches". **See Newberry**, 142 Idaho at 288. This is, "whether it was reasonably foreseeable that such harm would flow from the negligent conduct." **See Sisters of the Holy Cross**, 126 Idaho at 1040, 895 P.2d at 1233. This requires the court to determine whether the injuries and the manner of the occurrence are "so highly unusual that we can say, as a matter of law, that a reasonable [person] making an inventory of the possibilities of harm which his conduct might produce, would not have reasonably expected the injury to occur." **See** 126 Idaho at 1041. **See also Combs v. Curnow**, ____ Idaho ____, 219 P.3d 453, 464 (2009); **Cramer v. Slater,** 146 Idaho 868, 875, 204 P.3d 508, 515 (2009).

In **Ficaro v. McCoy**, 126 Idaho 122, 879 P.2d 30 (Ct. App. 1994), an attorney was sued for professional malpractice. The case centered upon the defendants' negotiation of a stipulation on his client's behalf. According to the plaintiff, McCoy filed the stipulation without her approval. She sought reimbursement of her retainer in addition to lost wages and general damages. McCoy contended the plaintiff had agreed to the stipulation and that her damages were caused by her own actions, rather than the entry of the stipulation. The court found that McCoy had breached the standard of care to his client by not seeking her approval of the stipulation. However, the court found there was no causal connection

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 17**

between the problems with the stipulation and the subsequent difficulties in the plaintiff's life. On that basis, judgment was entered in favor of McCoy. **See** 126 Idaho at 125. The Court of Appeals affirmed the trial court's finding on the grounds that the problems that had arisen in the plaintiff's life were not shown to be the direct result of the entry of the stipulation. The court concluded that applying either the "but for" or the "substantial factor" analysis for proximate cause, McCoy's negligence was not the cause in fact of Ficaro's alleged damages. **See** 126 Idaho at 127.

In this case, a similar conclusion is warranted. Even if one accepts the proposition the Dunford appraisal was flawed and, reached a low opinion of value, that fact did not cause the plaintiffs' damages. The plaintiffs were not precluded from obtaining their own appraisal or, negotiating a higher price. **See** Oral Depositions of Marge Edmo, p.32:17-22; Lillian Jackson, p. 52:7-12. More importantly, the enhanced value the plaintiff seeks is based upon the argument that the undeveloped land should have been appraised as an irrigated farm rather than an unirrigated range. They do not suggest the factual description of the land contained in the Dunford appraisal report is anything but accurate. See Oral Deposition of Lillian Jackson, p. 68:18-70:9. The legal problem this creates is the fact the Tribe would not have agreed to purchase the land as an irrigated farm without the improvements, namely a working irrigation system, a functioning well serviced by electricity and, other improvements. **See** Oral Deposition of Marge Edmo, p. 34:25-35:22. The plaintiffs' recognize they did not have the financial resources to make those improvements. **See** Oral Deposition of Lillian Jackson, p. 102:5-11; Veronda Mosho, p. 42:2-16. For that reason, they had little choice other than to sell the property in its existing undeveloped condition.

These facts establish the plaintiffs' alleged economic losses were not caused by the

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 18**

actions of Dunford. The Tribe would not have agreed to pay the higher price they now demand. Absent evidence establishing the Tribe would have agreed to purchase undeveloped land as an irrigated farm, a causal connection does not exist and, the plaintiffs' claims must be dismissed.

## IV.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court grant summary judgment in its favor and dismiss the claims in Plaintiffs' Complaint.

DATED this __1__ day of November, 2010.

ANDERSON, JULIAN & HULL LLP

By _____
Phillip J. Collaer, Of the Firm
Attorneys for Defendants

## CERTIFICATE OF MAILING

I HEREBY CERTIFY that on this ___/___ day of November, 2010, I served a true and correct copy of the foregoing by delivering the same to each of the following attorneys of record, by the method indicated below, addressed as follows:

| | |
|---|---|
| Dwight E. Baker<br>Jonathan W. Harris<br>BAKER & HARRIS<br>266 West Bridge Street<br>Blackfoot, Idaho 83221<br>Telephone: (208) 785-2310<br>Facsimile: (208) 785-6749 | ☐ U.S. Mail, postage prepaid<br>☐ Hand-Delivered<br>☐ Overnight Mail<br>☐ Facsimile<br>☒ Electronic Delivery |
| Robert C. Grisham<br>U.S. Attorney's Office<br>800 Park Blvd, Suite 600<br>Boise, ID 83712-9903<br>*Attorneys for United States of America* | ☐ U.S. Mail, postage prepaid<br>☐ Hand-Delivered<br>☐ Overnight Mail<br>☐ Facsimile 334-1414<br>☒ Electronic Delivery |

_____
Phillip J. Collaer

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 20**