Dwight E. Baker, ISB No. 1350
Jonathan W. Harris, ISB No. 6261
BAKER & HARRIS
266 West Bridge Street
Blackfoot, Idaho 83221
Telephone: (208) 785-2310
Facsimile: (208) 785-6749
E-Mail: jwharris@bakerharrislaw.com

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF IDAHO

| | |
|---|---|
| LILIAN JACKSON; VERONDA MOSHO, ELAINE MCKEAN; MARGIE WHITEHORSE; BLAINE JACKSON; LAVON JACKSON, SR.; LAVON JACKSON, JR.; ABIGAIL RAMSEY and DEBRA BILLY, all individuals,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA by and through THE DEPARTMENT OF INTERIOR, BUREAU OF INDIAN AFFAIRS; J.W. DUNFORD & ASSOCIATES, INC., an Idaho corporation; JOSEPH WILLIAM DUNFORD; ZACHARY P. MOORE and JOHN DOES 1-10,<br><br>Defendants. | Case No. 4:09-cv-00214-BLW<br><br><br>**PLAINTIFFS' RESPONSE TO DEFENDANT UNITED STATES OF AMERICA by and through THE DEPARTMENT OF INTERIOR, BUREAU OF INDIAN AFFAIRS' MOTION FOR SUMMARY JUDGMENT** |

COMES NOW, Plaintiffs Lilian Jackson, Veronda Mosho, Elaine McKean, Margie

Whitehorse, Blaine Jackson, LaVon Jackson, Sr., LaVon Jackson, Jr., Abigail Ramsey, and Debra

Billy, by and through their attorneys of record, Dwight E. Baker and Jonathan W. Harris of the law

**PLAINTIFFS' RESPONSE TO DEFENDANT UNITED STATES OF AMERICA by and through THE DEPARTMENT OF INTERIOR, BUREAU OF INDIAN AFFAIRS' MOTION FOR SUMMARY JUDGMENT - 1**

firm of BAKER & HARRIS, and hereby file their opposition to Defendant United States of America, by and through The Department of Interior, Bureau of Indian Affairs' Motion for Summary Judgment [Docket # 29].

## I.    STATEMENT OF UNDISPUTED FACTS

The United States Government by and through the Department of Interior, Bureau of Indian Affairs, (hereinafter collectively referred to as "BIA"), provided an Statement of Undisputed of Facts in its Memorandum in Support of Motion for Summary Judgment. Plaintiff's supplement the factual statement of the BIA as follows:

BIA's statement of facts is based almost entirely upon the declaration of Phillip E. Graf. In addition to his declaration, Mr. Graf testified on behalf of the BIA in response to a FRCP 30(b)(6) notice of deposition. *See* Deposition Exhibit 26.[1]

Plaintiffs' Lilian Jackson, Veronda Mosho, Layne Mckeen, Margie Whitehorse, Blaine Jackson, Lavon Jackson, Jr., Lavon Jackson, Sr., Abigail Ramsey and Debra Billy, are all members of the Shoshone-Bannock Tribe. The Plaintiffs owned 160 acres of trust land identified as SC/4 Section 9, Township 7 South, Range 32 E.B.M., Power County, Idaho, otherwise referred to as allotment 1486. Plaintiff Lilian Jackson can fairly be characterized as the lead Plaintiff inasmuch as she was more involved in initiating and completing the instant transaction than the other Plaintiffs, has a greater financial stake and Plaintiffs agreed that the deposition testimony of Lilian and her daughter Verona Mosho would binding on the other Plaintiffs. *See* Veronda Mosho Depo., p. 52:7-20.

---

[1]All Depositions taken in this case and deposition exhibits 1-28 are attached to the Affidavit of Phillip J. Collaer, thus Plaintiffs are not submitting those items to the Court again.

**PLAINTIFFS' RESPONSE TO DEFENDANT UNITED STATES OF AMERICA by and through THE DEPARTMENT OF INTERIOR, BUREAU OF INDIAN AFFAIRS' MOTION FOR SUMMARY JUDGMENT - 2**

The Plaintiffs inherited this land beginning in the 1950's when Lilian Jackson's father died, but none of the Plaintiffs ever personally farmed the land. *See* Lilian Jackson Depo., p. 16:3-23; 17:4-15; 18:17-25; 19:1-4.[2] Over the years the BIA leased the land to various farmers and members of the Jackson family received the lease proceeds. *Id.* p. 18:22-25; 19:1-4; 20:24-25; 21:1-7. However, for approximately 20 years prior to the sale the land had not been leased or otherwise utilized to produce income for the Plaintiffs. *Id.* p. 21:14-25; 26:2-22.

Plaintiffs had very little to do with the land in as much as they relied on the BIA to lease the land. *Id.* p. 26-22. In fact, neither Lilian Jackson nor Veronda Mosho had ever been to the subject property. *Id.* p. 119:13-15; Veronda Mosho Depo., p. 19:5-12. The Plaintiffs did not have resources to improve the property and thereby make it more attractive to lessees. Jackson Depo., p. 102:5-11; Mosho Depo., p. 46:2-16. It is obvious from Lilian's responses to deposition questions that Plaintiffs lacked the sophistication and resources they would have needed to independently research the value of the property and otherwise protect their own interest in this matter. Lilian Jackson testified as follows:

44

```
24    Q.  After the family made the decision you
25   were going to sell the property, did you ever
```

45

```
1    approach or list the property for sale with a real
2    estate agent?
3       A.  No.
4       Q.  And why not?
5       A.  I don't understand.
6       Q.  Is there any reason why you didn't
7    approach a real estate agent or somebody to help
```

---

[2] All Depositions taken in this case and deposition exhibits 1-28 are attached to the Affidavit of Phillip J. Collaer.

**PLAINTIFFS' RESPONSE TO DEFENDANT UNITED STATES OF AMERICA by and through THE DEPARTMENT OF INTERIOR, BUREAU OF INDIAN AFFAIRS' MOTION FOR SUMMARY JUDGMENT - 3**

8   you try to market your property?
9       A.  No.
10      Q.  Did you ever advertise the property
11  for sale?
12      A.  No.
13      Q.  And is there any reason why you
14  didn't?
15      A.  No.
16      Q.  Could you have done that if you had
17  wanted to?  I'm asking just for your
18  understanding.
19      A.  No, I don't think so.
20      Q.  Why not?
21      A.  I don't know.
              ***

                          49
5   Q.  You didn't talk to a realtor, an
6   accountant, an attorney, anybody of that nature to
7   give you advice about selling your property?
8       A.  No.
9       Q.  Prior to your decision to try to sell
10  the property, did anybody tell you or give you an
11  opinion as to what they though the value of the
12  property was?
13      A.  No.
14      Q.  Did you do anything to try to research
15  that or find out what the value of the property
16  was at that time?
17      A.  I don't get it.
18      Q.  That's fair.  My understanding of the
19  situation was the family -- you and the family had
20  made a decision that you were going to try and
21  sell the property to raise some cash so you could
22  pay some personal bills.  My question was, through
23  this process of you making that decision that you
24  were going to try and find a buyer, did you do
25  anything to try to find out what the value of the
                          50
1   property was?
2       A.  No.
3       Q.  Okay.  Is there any reason why you
4   didn't do that?
5       A.  I don't understand.

**PLAINTIFFS' RESPONSE TO DEFENDANT UNITED STATES OF AMERICA by and
through THE DEPARTMENT OF INTERIOR, BUREAU OF INDIAN AFFAIRS' MOTION
FOR SUMMARY JUDGMENT - 4**

***

25       Q.   Tell me, prior to the time you sold

51

1   the property was there any reason you could not
2   have had an appraisal, hire an appraiser, to give
3   you a value for that property?
4        A.   I don't know where to go.
5        Q.   Excuse me?
6        A.   I didn't know where to go to find out
7   the appraisal.
8        Q.   Okay.  You could not look in the phone
9   book, the Yellow Pages, for appraisers?
10       A.   No.
11       Q.   There are appraisers here in
12  Blackfoot, are there not?
13       A.   The BIA told me it costs money to get
14  appraisals.

In approximately August 2006, Lilian Jackson had financial obligations she needed to satisfy so she approached BIA regarding selling 160 acres. *Id.* p. 43:2-9. To that end, on August 17, 2006 Lilian Jackson submitted an application for sale of Indian land to the local BIA office at the Fort Hall Indian Reservation. *Id.* p. 87:1-4; Deposition Exhibit 2.  After the Plaintiffs submitted the application they were largely uninvolved regarding the process and procedure that was utilized by the BIA and the Tribe for completing the sale of the 160 acres.

In brief, the process utilized by the BIA after receiving applications for sale of trust land generally and the process utilized in this case is as follows. The BIA did routing sheet to different departments and Tribal Credit to see the departments have comments and to check for liens against the property. *See* Marge Edmo Depo., p. 14:12-25; 15:23-25; 16:1-3. Lilian Jackson did have a lien against her property for money she borrowed from the Tribe. Thereafter, the local BIA office requested an appraisal and gathered information pertinent to the 160 acres and forwarded that

**PLAINTIFFS' RESPONSE TO DEFENDANT UNITED STATES OF AMERICA by and through THE DEPARTMENT OF INTERIOR, BUREAU OF INDIAN AFFAIRS' MOTION FOR SUMMARY JUDGMENT - 5**

information to the BIA office in Portland, Oregon. *Id.* p. 16:7-25. Next, there was a waiting period

while the BIA had the appraisal done. *Id.* p. 17:2-8.

The BIA contracted with J.W. Dunford & Associates, Inc. (hereinafter "Dunford"), to do a

total of 130 appraisals on trust land located on the Shoshone-Bannock Reservation, which included

Plaintiff 160 acres. *See* Phillip Graf Declaration ¶ 17. The appraisal was finished on March 5, 2007

and was then sent the Portland BIA Office where a paper or desk review was done and the reviewer

found Dunford's appraisal acceptable. *See* Phillip Graf Depo., p. 41:9-25; Edmo Depo., p. 19:15-19;

Deposition Exhibit #6. Dunford's appraisal concluded that the highest and best use of Plaintiffs' land

was as range land and was thus worth only worth $150 per acre for a total of $24,000. *See* Deposition

Exhibit #6. This is in spite of the fact that Plaintiffs' land was previously farmed, had a well on it,

much of the land surrounding it was being farmed and the BIA's own internal documents indicated

that the highest and best use of the land was as farm land. *See* Graf Declaration ¶ 9, Exhibit B;

Frederick Hernandez Depo., p. 48:9-23.

The appraisal was approved by the Portland BIA Office on May 10, 2007. *See* Deposition

Exhibit #8. After its approval the appraisal came back to the local BIA Office and a letter was sent

to the Plaintiffs informing them of the amount of money they stood to receive under appraisal. *See*

Edmo Depo., p. 19. The actual appraisal was not provided to Plaintiffs until after the transaction was

completed. *See* Jackson Depo., p. 60:18-23; 63:6-17. As she does in other cases, Marge Edmo,

Realty Officer for the BIA Fort Hall Office, set up a meeting with Tribal Land Use Department to

see if the Tribe wanted to purchase the land for the appraised price, assuming the land owner accepts

the appraisal amount. At the meeting Edmo and members of Tribal Land Use Department went

**PLAINTIFFS' RESPONSE TO DEFENDANT UNITED STATES OF AMERICA by and through THE DEPARTMENT OF INTERIOR, BUREAU OF INDIAN AFFAIRS' MOTION FOR SUMMARY JUDGMENT - 6**

through the appraisal to make sure the land will bring in enough money to justify the expenditure. *See* Edmo Depo., p. 22:17-25; 23:1-13.

Then the Tribal Land Use Department made a recommendation to the Tribal Council and the Tribal Council, as is typical, accepted the recommendation to purchase the property and adopted a resolution to purchase the property. *Id.* p. 23:14-25; 24:1-3. After the BIA office received the resolution it notified Plaintiffs to come in and sign a deed. *Id.* p. 24:4-10. The BIA completed all paperwork necessary to finalize the transfer of the land. *Id.* p. 20:15-17. Plaintiffs executed deeds which transferred the property on July 2006, 2007. *See* Deposition Exhibit #12.

Lilian Jackson received a copy of the appraisal after the land had been sold and upon reviewing the same she had questions so she turned to Frederick "Sam" Hernandez, a BIA employee who serves as Agricultural Engineer at the Fort Hall Office. *See* Hernandez Depo., p. 12:6-10; Jackson Depo., p. 50:12-24; 64:9-25. Mr. Hernandez the questioned whether the appraisal was accurate given that the land had been farmed and was capable of being farmed again so he advised Lilian to speak to the Superintendent Eric LaPoint. *See* Hernandez Depo., p. 48:9-23; Jackson Depo., p. 71:9-15. Lilian addressed her concerns with Mr. LaPoint who indicated that Lilian had already sold the property so nothing would be done. Jackson Depo., p. 72:19-25; 73:1-13. Lilian threatened to sue Mr. LaPoint and he said go ahead because he did not care. *Id.* p. 74:8-16. As her last resort Lilian spoke a Mr. Fisher of the Tribal Council who spoke with Alonzo Coby, Chairman of the Council. *Id.* p. 77:15-23; 78:5-10; 79:7-25. There was discussion about getting another appraisal and Lilian was told that they would get back to her, but no one from the council followed-up with Lilian. *Id.* p. 80:1-17.

**PLAINTIFFS' RESPONSE TO DEFENDANT UNITED STATES OF AMERICA by and through THE DEPARTMENT OF INTERIOR, BUREAU OF INDIAN AFFAIRS' MOTION FOR SUMMARY JUDGMENT - 7**

After the sale, the land was let out for bid a farmer named Jeremiah Clark was awarded the bid. To that end Mr. Clark signed a lease with the BIA on April 8, 2008, and thereafter made improvements to the property which has increased its value. *See* Jeremiah Clark Affidavit. After retaining counsel and filing a Notice of Claim with the BIA, Plaintiffs engaged John Chidester to appraise the land. Mr. Chidester indicated that the land appraised for $272,000. *See* Affidavit of Jonathan W. Harris.

## II.   SUMMARY JUDGMENT STANDARD

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56 provides, in pertinent part, that judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

For purposes of summary judgment, the moving party bears the initial burden of proving the absence of material fact issues, and "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Dufay v. Bank of America N.T. & S.A. of Oregon*, 94 F.3d 561, 564 (9th Cir. 1996); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Where there are undisputed facts from which different ultimate inferences might reasonably be drawn and as to which reasonable persons might differ, the case is not suitable for summary judgment. *See, e. g., United States v. Diebold*, 369 U.S. 654, 655 (1962) (per curiam); *United States v. Perry*, 431 F.2d 1020, 1022 (9th Cir. 1970).

**PLAINTIFFS' RESPONSE TO DEFENDANT UNITED STATES OF AMERICA by and through THE DEPARTMENT OF INTERIOR, BUREAU OF INDIAN AFFAIRS' MOTION FOR SUMMARY JUDGMENT - 8**

## III.   ARGUMENT

In their Complaint Plaintiffs' alleged that the BIA was liable for damages or negligence and breach of fiduciary duties. In this opposition Plaintiffs will only address the breach of fiduciary duty aspect of this case.

### A.   Jurisdiction

This Court has supplemental jurisdiction over Plaintiffs' claims through the Indian Tucker Act, 28 United States Code § 1505 and/or the Tucker Act, 28 United States Code § 1491. 28 USC §1367 provides in relevant part:

> (a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.
>
> (b) In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title [28 USCS § 1332], the district courts shall not have supplemental jurisdiction under subsection (a) over claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure, or over claims by persons proposed to be joined as plaintiffs under Rule 19 of such rules, or seeking to intervene as plaintiffs under Rule 24 of such rules, when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332 [28 USCS § 1332].
>
> (c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if–
>
> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

**PLAINTIFFS' RESPONSE TO DEFENDANT UNITED STATES OF AMERICA by and through THE DEPARTMENT OF INTERIOR, BUREAU OF INDIAN AFFAIRS' MOTION FOR SUMMARY JUDGMENT - 9**

(3) the district court has dismissed all claims over which it has
original jurisdiction, or
(4) in exceptional circumstances, there are other compelling reasons
for declining jurisdiction.

This court has supplemental jurisdiction over Plaintiffs' breach of fiduciary duty claims

against the BIA because of the other claims and parties over which this court has original

jurisdiction. Namely, Plaintiffs claims against J.W. Dunford & Associates, Inc., Joseph Dunford and

Zachary Moore ("Dunford") are claims that are so related to the breach of fiduciary duty claims "that

they form part of the same case or controversy under Article III of the United States Constitution."

The cases against the BIA and Dunford involve many common questions of fact and law such that

the cases should in the interest of economy and justice be tried together.

Alternatively, it this Court determines that only the Court of Federal Claims has jurisdiction

over Plaintiffs' claims for breach of a fiduciary duty, then Plaintiffs respectfully request that this case

be transferred to the Court of Federal Claims pursuant to 28 USC § 1631 which provides:

> Whenever a civil action is filed in a court as defined in section 610 of
> this title [28 USCS § 610] or an appeal, including a petition for
> review of administrative action, is noticed for or filed with such a
> court and that court finds that there is a want of jurisdiction, the court
> shall, if it is in the interest of justice, transfer such action or appeal to
> any other such court in which the action or appeal could have been
> brought at the time it was filed or noticed, and the action or appeal shall
> proceed as if it had been filed in or noticed for the court to
> which it is transferred on the date upon which it was actually filed in
> or noticed for the court from which it is transferred.

In *Skokomish Indian Tribe v. United States*, 410 F.3d 506, 511 (9th Cir. 2005) court determined that

it lacked jurisdiction over plaintiffs claims so under § 1631 the court transferred the claims against

the United States to the Court of Federal claims. Likewise, in this case Plaintiffs have valid breach

**PLAINTIFFS' RESPONSE TO DEFENDANT UNITED STATES OF AMERICA by and
through THE DEPARTMENT OF INTERIOR, BUREAU OF INDIAN AFFAIRS' MOTION
FOR SUMMARY JUDGMENT - 10**

of fiduciary duty claims against the BIA and Plaintiffs in the interest of justice should not be denied relief merely for want of jurisdiction.

**B.     Breach of Fiduciary Duties**

Plaintiffs have stated a claim against the BIA for breach of fiduciary duty and there material fact issues in dispute which require denial of the BIA's Motion for Summary Judgment. It is settled law that the Indian Tucker Act and the Tucker Act provide a waiver of the BIA's sovereign immunity. *Shoshone-Bannock Tribes of the Fort Hall Reservation v. Untied States of America*, 2006 U.S. Dist. Lexis 75496. However, to state a claim under either law a tribe or "Indian must identify a substantive source of law that establishes specific fiduciary or other duties and allege that the government has failed to faithfully perform those duties" *United States v. Navaho Nation*, 536 U.S. 488, 506, 123 SCT. 1079, 155 LED 2d 60 (2003). "If that threshold is passed the Court must then determine whether the relevant source of substantive law can be interpreted as mandating compensation for damages sustained as a result of a breach of the duties that governing law imposes." *Id.* (Internal quotations and citations omitted.)

A general trust relationship between the United States and the Indian people can reinforce a conclusion that a relevant statute or regulation imposes fiduciary duties, but that general trust relationship alone is insufficient to support jurisdiction under the Indian Tucker Act. *Id.* "Instead, the analysis must train on specific rights-creating or duty imposing statutory or regulatory prescriptions. Those prescriptions need not, however, expressly provide for money damages; the availability of such damages may be inferred." *Id.*(Internal quotations and citations omitted.)

In *Shoshone-Bannock Tribes of the Fort Hall Reservation v. Untied States of America*, 2006 U.S. Dist. Lexis 75496, this Court explained this area of law reference to what has become known

**PLAINTIFFS' RESPONSE TO DEFENDANT UNITED STATES OF AMERICA by and through THE DEPARTMENT OF INTERIOR, BUREAU OF INDIAN AFFAIRS' MOTION FOR SUMMARY JUDGMENT - 11**

as *Mitchell I* and *Mitchell II* namely, *United States v. Mitchell*, 445 U.S. 535, 100 SCT. 1349, 63

L.ED. 2d 607 (1980)("*Mitchell I*"), and *United States v. Mitchell*, 463 U.S. 206, 103 SCT. 2961, 77

L.ED. 2d 580 (1983)("*Mitchell II*"). This court explained:

> Based on those two cases, in order for a fiduciary duty to be
> enforceable through an action for money damages, 'the relevant
> statutes and regulations must unambiguously provide that the United
> States has undertaken full fiduciary responsibilities as to the
> particular aspect of the relationship complained of." *Wright v. United*
> *States*, 32 FED. CL 54, 56 (1994)(Internal quotations and citations
> omitted.) " The availability of monetary remedy depends upon the
> extent of the role the government is to play in the statutory regulatory
> scheme upon which Plaintiff relies." *Id*. at 57. "The statutes and
> regulations defining the activity in question must show congressional
> intent to assume a trust relationship with specific contours .... the
> statutes and regulations at issue must be fairly susceptible to a
> construction that would impose particular fiduciary duties, the
> violation of which were contemplated to result in financial
> accountability." Id. (Internal quotations and citations omitted.)

In the instant case, (1) the Code of Federal Regulations ("CFR") imposes on the BIA as a

trustee and fiduciary specific regulatory duties with respect to the sale of Indian trust land; (2) there

are material facts in dispute regarding whether the BIA fulfilled those fiduciary duties; and (3)

because the BIA has comprehensive control and authority over the sale of Indian trust land violation

of these duties must result in financial accountability.

1.    **The CFR imposes specific fiduciary duties on the BIA pertaining to the
sale of Indian Trust Land.**

We start with 25 CFR §152.22, entitled "Secretarial Approval Necessary to Convey

Individual-Owned Trust or Restricted Lands or Land owned by a Tribe", provides in relevant part:

> (a) Individual lands. Trust or Restricted Lands, except inherited lands
> of the Five Civilized Tribes, or any interest therein, may not be
> conveyed without the approval of the Secretary. Moreover, inducing
> an Indian to execute an instrument purporting to convey any trust land

**PLAINTIFFS' RESPONSE TO DEFENDANT UNITED STATES OF AMERICA by and
through THE DEPARTMENT OF INTERIOR, BUREAU OF INDIAN AFFAIRS' MOTION
FOR SUMMARY JUDGMENT - 12**

or interest therein or the offering of any such instrument for record, is prohibited and criminal penalties may be incurred.(See 25 United States Code 202 and 348.)

Second, 25 CFR §152.23 entitled "Applications for Sale, Exchange or Gift" provides:

Applications for the sale, exchange or gift of trust or restricted land shall be filed in the form approved by the Secretary with the agency having immediate jurisdiction over the land.  Applications may be approved if, after **careful** examination of the **circumstances in each case**, the transaction appears to be clearly justified in light of the long-range best interest of the owner or owners or as under conditions set out in section 152.25(d). (Emphasis added).

Presumably in order to assist the secretary in fulfilling duties outlined above 25 CFR §152.24 mandates that "**an appraisal shall be made indicating the fair market value prior to making or approving a sale**." (Emphasis added). Finally, the Secretary retains ultimate authority disapprove of a sale under 25 CFR §152.29 entitled "Rejection of bids; disapprove of sale" which provides:

The Secretary reserves the right to reject any and all bids before the award, after the award, or at any time prior to the issuance of a patent or delivery of a deed, when he shall have determined such rejection to be in the best interest of the Indian owner.

Under these regulations the BIA must approve all sales of Indian trust land. The BIA cannot approve the sale of Indian trust land first doing the following: (1) The BIA must receive an application in a form approved by the Secretary; (2) the BIA must obtain an appraisal which **indicates fair market value**; (3) thereafter the BIA can only approve a proposed sale if "after **careful** examination of the **circumstances in each case**, the transaction appears to be clearly justified in light of the long-range best interest of the owner or owners." 25 CFR §152.23.

Certainly, these regulations imposes specific fiduciary duties on the BIA which duties take center stage in the instant case.

**PLAINTIFFS' RESPONSE TO DEFENDANT UNITED STATES OF AMERICA by and through THE DEPARTMENT OF INTERIOR, BUREAU OF INDIAN AFFAIRS' MOTION FOR SUMMARY JUDGMENT - 13**

## 2.     The BIA breached or arguably breached fiduciary duties

With respect to the specific duties identified above the only thing the BIA actually did was receive an application for sale on a form it approved. Thereafter, the BIA did not obtain an appraisal which indicates fair market value and the BIA did not carefully review the circumstances in this case and approve the sale upon concluding that the transaction was clearly justified in light of the long range best interests of the owners.

First, the BIA obtained an appraisal which purported to indicate fair market value, but actually missed the mark by a huge margin. The appraisal prepared by Dunford for the BIA indicated fair market value was $24,000 while Plaintiffs' expert appraiser indicated fair market value was $272,000. Thus, the BIA failed to obtain an appraisal which indicates fair market value in violation of its duties, or at a minimum Plaintiffs have raised a material fact issue as whether the BIA fulfilled its duty in this regard. Weighing and evaluating the credibility of expert witnesses may not be done at the summary judgement stage, thus the Court must assume for purposes of summary judgement that Plaintiffs' expert appraisal of $272,000 is accurate.

Second, the record reflects that BIA did not carefully examine the circumstances of this case and determine that this transaction was in Plaintiffs long-range best interests. Paraphrasing Marge Edmo's testimony the following takes place when an Indian wants to sell their trust land:

1.     The Indian owner does is goes to the local BIA office at Fort Hall and completes a BIA form application.  Edmo Depo., p. 14. The application which Plaintiffs completed in this case is Deposition Exhibit 2.  *Id.* p. 15.

2.     After the application is completed the BIA will do a routing sheet to different departments to see if any such departments have comments or it there is a right of way on the property.

**PLAINTIFFS' RESPONSE TO DEFENDANT UNITED STATES OF AMERICA by and through THE DEPARTMENT OF INTERIOR, BUREAU OF INDIAN AFFAIRS' MOTION FOR SUMMARY JUDGMENT - 14**

In addition, the routing sheet goes to Tribal Credit to see if there are any liens against the property which will get paid at the time of sale. *Id.*

3.  Thereafter, the local BIA office will request an appraisal and will gather information pertinent to the trust land proposed to be sold and forward that information to the BIA office in Portland, Oregon. *Id.* p. 16.

4.  Next, there is a waiting period while the BIA has the appraisal done in house or engages a private contractor to do the appraisal. Phillip E. Graf Depo., p. 19; Edmo Depo., p. 17. Edmo testified that it is seldom that an appraiser will ever contact her local BIA office to request additional information because usually the packet that they send to Portland already contains everything the BIA has. Edmo Depo., p. 16.

5.  After the appraisal is finished it is sent the Portland BIA Office where a desk review is done. Graf Depo. at page 41; Edmo Depo., p. 19.

6.  After the appraisal is approved by the Portland BIA Office, it comes back to the local BIA Office and a letter is sent to the Indian land owner informing them of the amount of money they stand to receive under appraisal. Edmo Depo., p. 19. The actual appraisal is not provided to the Indian land owner and in case was not provided to Plaintiffs. Lilian Jackson Depo., p. 60:18-23; 63:6-17.

7.  If the Indian land owner accepts the amount they are to receive under the appraisal, Marge Edmo will set up a meeting with Tribal Land Use Department to see if the Tribe will want to purchase the land for the appraised price. At the meeting Edmo and members of Tribal Land Use Department will go through the appraisal to make sure the land will bring in enough money to justify the expenditure. Edmo Depo., p. 22-23. Then the Tribal Land Use

**PLAINTIFFS' RESPONSE TO DEFENDANT UNITED STATES OF AMERICA by and through THE DEPARTMENT OF INTERIOR, BUREAU OF INDIAN AFFAIRS' MOTION FOR SUMMARY JUDGMENT - 15**

Department will make a recommendation to the Tribal Council and the Tribal Council will usually accept a recommendation to purchase the property and will adopt a resolution to purchase the property. Edmo Depo., p. 23. Once the BIA office receives the resolution it will notify the land owner to come in and sign a deed. Edmo Depo., p. 24.

What is entirely missing from this process is careful consideration of whether the transaction is justified in light of the long-term interests of the Indian land owner. The BIA takes time to counsel with Tribal Land Use Department as to whether the transaction is in the Tribe's interest and protects the Tribe's interest with respect to any liens against the property in favor of the Tribe. However, the BIA takes no similar action with respect to the individual land owners. Rather, the only thing the BIA does to protect the interest of the individual land owner is to order the appraisal which is far cry from what the CFR requires. Certainly, there may be situations where the BIA appraisal may be accurate, but it is not in the land owner's interest to sell for that amount.

For example, in this case the land sold by Plaintiffs is now leased to a farmer as part of a larger parcel and the farmer has made certain improvements to the land which will remain with the land and have increased its value. Affidavit of Jeremiah Clark. Coincidentally, this lease was negotiated the year after Plaintiff sold the property after the land had lain fallow for more than 20 years. Wouldn't it have been Plaintiffs' interest to keep the land, receive lease payments and then have property worth even more because of capital improvements made by the lessee? Edmo Depo., p. 36. At a bare minimum the BIA should have counseled with Plaintiffs about this type of opportunity. The BIA also has comprehensive authority over leasing of trust land so the BIA employees were in a perfect position to counsel Plaintiffs regarding such opportunities. *See, Cobell v. Norton*, 225 F.R.D. 41, 52 (D.D.C. 2004)(explaining that under 25 CFR § 152 the Department of

**PLAINTIFFS' RESPONSE TO DEFENDANT UNITED STATES OF AMERICA by and through THE DEPARTMENT OF INTERIOR, BUREAU OF INDIAN AFFAIRS' MOTION FOR SUMMARY JUDGMENT - 16**

Interior was obligated to provide information to the plaintiffs in that class action case for plaintiffs to make an informed decision about selling their trust land).

The BIA clearly did not fulfill its obligations with respect to looking out for the best interests of the individual Indian Land owners, but rather the BIA seemed focused on helping the Tribal to th exclusion and detriment of the individual Indian land owners. The following exchange during the deposition of Marge Edmo illuminates this problem:

```
                                29
16   Q.  But when you say "we," you're not with
17        the tribe.  You're with the BIA?
18            A.  Well, we all -- I say "we" because
19        we're all in -- you know, we all meet together,
20        and we all say this and that.  And we stick to
21        our rules and whatnot.
22                Okay.  You want me to say --
23            Q.  You're not a --
24            A.  A tribal employee.
25            Q.  You're a tribal member, but you're not
                                30
 1        a tribal employee because you're employed by the
 2        BIA?
 3            A.  Right.
 4            Q.  Okay.  So when you say "we," it
 5        sometimes gets a little confusing.
 6            A.  Yes, because I work for both.
```

This is the problem. Marge Edmo and the BIA are working for the interest of the United States and the Tribe, but not the individual Indian land owners which constitutes a violation of the BIA's fiduciary duties.

## IV.    CONCLUSION

Based on the forgoing, the BIA did breach fiduciary duties which renders it liable for money damages.

**PLAINTIFFS' RESPONSE TO DEFENDANT UNITED STATES OF AMERICA by and through THE DEPARTMENT OF INTERIOR, BUREAU OF INDIAN AFFAIRS' MOTION FOR SUMMARY JUDGMENT - 17**

DATED this _22nd_ day of November, 2010.

BAKER & HARRIS

_____
Jonathan W. Harris

## CERTIFICATE OF SERVICE

I hereby certify that on the _22_ day of November, 2010, the within and foregoing **PLAINTIFFS' RESPONSE TO DEFENDANT UNITED STATES OF AMERICA by and through THE DEPARTMENT OF INTERIOR, BUREAU OF INDIAN AFFAIRS' MOTION FOR SUMMARY JUDGMENT** was electronically filed with the Clerk of the Court using the Bankruptcy Court's CM/ECF filing system, and upon such filing the CM/ECF registered participants in this case were served by electronic means.

Phillip J Collaer
pcollaer@ajhlaw.com, mdonnelly@ajhlaw.com,clong@ajhlaw.com

Robert C Grisham
Robert.Grisham@usdoj.gov,Karen.Sellman@usdoj.gov,janis.malm@usdoj.gov,Pamela.Hamlin@usdoj.gov,usaid.ecfnotice@usdoj.gov

_____
Jonathan W. Harris

**PLAINTIFFS' RESPONSE TO DEFENDANT UNITED STATES OF AMERICA by and through THE DEPARTMENT OF INTERIOR, BUREAU OF INDIAN AFFAIRS' MOTION FOR SUMMARY JUDGMENT - 18**