Phillip J. Collaer, ISB No. 3447
ANDERSON, JULIAN & HULL LLP
C. W. Moore Plaza
250 South Fifth Street, Suite 700
P. O. Box 7426
Boise, ID 83707-7426
Telephone: (208) 344-5800
Facsimile: (208) 344-5510
E-mail: pcollaer@ajhlaw.com

Attorneys for Defendants J.W. Dunford and Associates, Joseph William Dunford and Zachary Moore

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| **LILIAN JACKSON; VERONDA MOSHO, ELAINE MCKEAN; MARGIE WHITEHORSE; BLAINE JACKSON; LAVON JACKSON, JR.; LAVON JACKSON, JR.; ABIGAIL RAMSEY and DEBRA BILLY, all individuals,**<br><br>Plaintiffs,<br><br>vs.<br><br>**UNITED STATES OF AMERICA by and through THE DEPARTMENT OF INTERIOR, BUREAU OF INDIAN AFFAIRS; J.W. DUNFORD & ASSOCIATES, INC., an Idaho corporation; JOSEPH WILLIAM DUNFORD; ZACHARY P. MOORE and JOHN DOES 1-10,**<br><br>Defendants. | Case No. CV09-214<br><br>**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

**I.**

**ARGUMENTS THAT WERE NOT ADDRESSED IN PLAINTIFFS' RESPONSE SHOULD BE DEEMED CONCEDED**

The Complaint contains two causes of action against Dunford, Moore and J.W. Dunford & Associates, Inc. (Dunford defendants). Count I alleges the appraisal was not

performed in a reasonable fashion. Count III alleges plaintiffs were third party beneficiaries to the contract between Dunford and the BIA. Defendants challenged these theories on multiple grounds. First, plaintiffs are not third party beneficiaries to the Dunford/BIA contract. Second, the contract claims must be litigated as a negligence action for professional malpractice. Third, the negligence claims are based upon negligent misrepresentation which is only recognized in the limited context of an accounting dispute. Fourth, the defendants did not breach any duty of care in tort, owed to the plaintiffs. Fifth, the appraisal report prepared by the Dunford defendants is not the proximate cause of the economic damages the plaintiffs seek in this litigation. Lastly, all negligence claims are bared by the economic loss rule.

The plaintiffs have limited their response to the portions of defendants' motion regarding the economic loss rule and, the lack of proximate cause. They offer no factual or legal response to the arguments challenging the contract claims. Generally, a party's failure to respond to a dispositive motion "...may be deemed to constitute a consent to the sustaining of said pleading or the granting of said motion or other application." ***See*** Dist. Idaho Loc. Civ. R. 7.1(e). For that reason, Count III must be dismissed. Additionally, plaintiffs have not responded to the portions of defendants motion arguing the tort claims are based upon negligent misrepresentation or, that the defendants did not breach any duties in tort owed to the plaintiffs. These arguments, independently, support the dismissal of the remaining claims which are based upon negligence or professional malpractice. For that reason, all claims in Count I of the Complaint should be dismissed.

**II.**

**THE ECONOMIC LOSS RULE BARS THE PLAINTIFFS NEGLIGENCE CLAIMS AGAINST THE DUNFORD DEFENDANTS**

In their response, plaintiffs acknowledge they are seeking economic losses in tort, which implicates the economic loss rule. Plaintiffs recognize that while the Idaho Supreme Court has recognized a "special relationship" exception to the general rule prohibiting the recovery of purely economic losses in tort, the exception is extremely narrow. ***See*** ***Duffin v. Idaho Crop Imp. Ass'n***, 126 Idaho 1002, 1008, 895 P.2d 1195, 1201 (1995); ***Blahd v. Richard B. Smith***, 141 Idaho 296, 301-302, 108 P.3d 996, 1001-1002 (2005); ***Aardema v. U.S. Diary Systems, Inc.***, 147 Idaho 785, 792-793, 215 P.3d 505, 512-513 (2009).

Plaintiffs attempt to avoid summary judgment by arguing a special relationship existed between themselves and the Dunford defendants. Their alleged special relationship is based upon the argument that Dunford performed an appraisal at the request of the BIA and, because he is a licensed appraiser he therefore holds himself out to the public as having expertise to perform the specialized function of appraising real property. Finally plaintiffs suggest that because Dunford was aware the BIA manages tribal lands, he was also aware of a fiduciary relationship between the BIA and tribal members. ***See*** Dkt # 40, pp. 12-13.

The flaw in these arguments is the lack of evidence establishing a professional or specialized relationship arose between the Jacksons and the Dunford defendants which would serve as an exception to the economic loss rule. The controlling and undisputed facts on this issue are (1) Dunford was hired by the BIA; (2) the plaintiffs did not speak with Dunford and, did not know Dunford or anyone else had been hired to appraise the property; (3) plaintiffs did not see the Dunford appraisal report until after the sale was completed and admit they did not rely upon its opinion of value when they chose to accept the BIA offer; (4) the plaintiffs could have hired their own appraiser and attempted to

negotiate a price; (5) plaintiffs could have marketed their property to buyers other than the BIA; and, (6) plaintiffs were not required to sell their property to the BIA or the tribe. The factual record lacks any evidence suggesting the Dunford defendants held themselves out to the plaintiffs or, that they engaged in any activities which caused reliance by the Jacksons upon any work the Dunford defendants were asked to perform by the BIA. Absent evidence the defendants' activity sought to induce reliance by the Jacksons upon appraisal services Dunford provided BIA, a special relationship does not arise. ***See Duffin v. Idaho Crop Improvement Assn.***, 126 Idaho 1002, 895 P.2d 1195 (1995). ***Also see Blahd v. Richard B. Smith***, 141 Idaho at 301-302. Otherwise, every professional can be held liable for economic losses allegedly suffered by unnamed plaintiffs whom they do not know and, with whom, they had no contact. Additionally, any product seller who markets their product to the public could be liable for economic losses suffered by an individual who did not purchase their product. Under the plaintiff's argument, the special relationship exception would effectively abolish the general rule that economic losses are not recoverable in a negligence action. The Idaho courts have rejected similar arguments holding the exception must be narrowly applied.

In ***Blahd v. Richard B. Smith***, supra, the claims against the developer, the engineers, and professionals hired by the developer were dismissed under the economic loss rule. On appeal, plaintiffs argued a special relationship existed as, the developer and its engineers performed a specialized function which was relied upon by the general public namely future buyers of the home that was constructed on the building lot. This argument was rejected with the court writing:

> As real estate developers of the lot in question, the Smith Entities may arguably be considered quasi-professional. Even

> if they are, there is no evidence showing the Smith Entities performed a personal service for the Blahds or held themselves out as having a special and unique expertise. Furthermore, even if the Smith Entities marketed the lot in question to the general public, there is no indication in the record that the Blahds relied on those representations. Accordingly, there is no special relationship between the Blahds and the Smith Entities.
>
> The Smith Entities hired Jones to supervise the lot preparation and provide geotechnical services. The Gyslings also hired Jones to inspect the soil on the lot and determine whether it was adequate for residential construction. There is no indication in the record that the Blahds relied upon or were even aware of Jones's services regarding the lot. Like the lack of evidence regarding the inducement of reliance by the Federal State Inspection Service in ***Duffin***, there was no evidence in the record showing Jones actively sought to induce the Blahds to rely on its services. Therefore, the special relationship exception does not apply to Jones.

***See*** 141 Idaho at 301-302.

The requirement the defendant do something intended to induce reliance on the part of the plaintiff was again addressed and affirmed in ***Aardema v. U.S. Diary Systems, Inc.***, supra. Addressing the negligence claims against the manufacturer and supplier of an allegedly defective milking system, the court wrote:

> The district court properly granted summary judgment in favor of Westfaliasurge as to whether the special relationship exception applied in this case. There was no evidence in the record to suggest that Westfaliasurge constituted a "professional or quasi professional" service or that Westfaliasurge held itself out as having an expertise which knowingly induced Aardema Diary's reliance on Westfaliasurge's expertise.

***See*** 147 Idaho at 792.

The facts in this case cannot be distinguished from the holdings ***Blahd v. Smith***, and ***Aardema v. U.S. Dairy Systems***. Like the engineers who were hired by the

developer in ***Blahd*** to supervise the lot preparation and provide geotechnical services, or manufacturer who sold an allegedly defective milking system, Dunford was hired by the BIA, to provide professional services which were then utilized by the BIA to assist that agency in its management of trust property. The appraisal was not performed for the purpose of "knowingly inducing" the Jacksons reliance upon Dunfords expertise as the contract between the BIA and Dunford prohibited the defendants from sharing any information in the appraisal, including its opinion of value, with anyone. ***See*** Deposition Exhibit 17, p. 2. In other words, Dunford was contractually prohibited from engaging in the type of activity that could induce the Jacksons reliance.

In ***Blahd***, the fact the engineers were directly involved in assessing the building site and determining whether the lot was adequate for residential construction did not create a special relationship between the engineers and, the plaintiffs who ultimately purchased a home constructed on the lot. Because there was no evidence the Blahds relied upon any representations made by the developer to palintiffs or, any evidence the plaintiff relied upon the engineers services, established the lack of a special relationship between the developer and the plaintiff or, the plaintiff and the engineers hired by the developer.

The Supreme Court in ***Blahd v. Richard B. Smith,*** supra and ***Aardema v U.S. Dairy Systems*** clearly ruled that in order for a special relationship to arise, the plaintiff, in this case the Jacksons, must present evidence establishing that the Dunford defendants actively sought to induce reliance on the part of the Jacksons. The record before this court lacks any evidence to support the existence of a special relationship between the Dunford defendants and the plaintiffs. Like the federal state inspectors in ***Duffin v. Idaho Crop Imp. Ass'n***, supra and, the developer or engineers in ***Blahd v. Richard B. Smith***, supra,

or the manufacturer in ***Aardema v U.S. Dairy Systems,*** supra, the Dunford defendants were hired to perform an appraisal which the BIA then utilized for its own purposes. Defendants were prohibited by the terms of their contract with the BIA from sharing any aspect of the appraisal information without first obtaining the approval of the BIA. ***See*** Deposition, Exb. 17, p. 2. The record lacks any evidence the Dunford defendants held themselves out to the Jacksons as having performed a specialized function which the Jacksons then relied upon. Because a special relationship never arose, the economic loss rule bars plaintiffs' negligence claims.

**III.**

**PROXIMATE CAUSE**

The defendants' motion for summary judgment establishes a lack of a causal connection between the Dunford appraisal and the economic losses the plaintiffs seek. As recognized in the plaintiffs' briefing, they could have sold their property to potential buyers other than the tribe. ***See*** plaintiffs' response, dkt. #40, p. 14. They also could have obtained their own appraisal and, attempted to negotiate a higher price than the initial offer they received from the BIA . ***See*** Oral Deposition of Marge Edmo, p. 32, 17-22; Oral Deposition of Lilian Jackson, p. 52, 7-12. Plaintiffs do not suggest they were prevented from exercising those options by the Dunford defendants. Instead, plaintiffs simply chose to not exercise those choices and, accepted the BIA offer. These facts establish the lack of a causal connection between the Jackson's economic losses and, the opinion of value contained in the Dunford appraisal. Plaintiffs recognize and admit they could have obtained their own appraisal, negotiated for a higher price, attempted to sell to a different buyer or, simply chosen not to sell the property to anyone, including the BIA. These were

all options available to the Jacksons. Because plaintiffs had no contact with the Dunford defendants, did not see the Dunford appraisal until after they had sold their property and, did not rely upon the appraisal in making any decisions regarding whether to sell the property, the Dunford appraisal was not, as a matter of law, a cause in fact of the plaintiffs' injuries. These facts are indistinguishable from the holdings in ***Ficaro v. McCoy***, 126 Idaho 122, 879 P.2d 30 (Ct. App. 1994).

Additionally, as recognized by the plaintiffs, their damages are based upon their belief the actual opinion of value in the appraisal should have been $272,000. The problem with this is the fact the value plaintiffs would have liked is based upon the property being valued as a developed irrigated farm with functioning wells, pumps, and center pivot irrigation systems. The record lacks any evidence suggesting there were any buyers who would have agreed to pay $272,000 for a parcel which contained 110 acres of farmable land that had not been cultivated or irrigated for twenty years and, which would need to be improved at a cost of hundreds of thousands of dollars. ***See*** Affidavit of Jeremiah Clark; ***see also*** oral deposition of Lilian Jackson 70:20-25; 71:1-6. The BIA's 30(b)(6) designee, Marge Edmo, testified the tribe would not consider paying a price based upon improvements that did not exist. ***See*** Oral Deposition of Marge Edmo, p. 35:16-22.[1] Additionally, the plaintiffs acknowledge, through the testimony of Lilian Jackson, that they would not agree to purchase land for a based upon improvements that did not exist. ***See***

1 Contrary to the plaintiffs' argument, Ms. Edmo does have personal knowledge of whether the BIA would agree to purchase the property under those circumstances. She was designated by the government as its 30(b)(6) designee regarding the policies, practices and procedures which would govern the price or amount a tribal member would receive when they sold their trust land to the tribe. *See* Oral Deposition of Phil Graf, Exb. 26. Additionally, Ms. Edmo is a "realty officer" employed by the BIA. *See* oral deposition of Marge Edmo, p. 13:13-15. She processes requests from tribal members to sell their trust land. ***Id.***, p. 13:21 – 14:8. She has personal knowledge of the tribe's practices concerning the purchase of trust property from tribal members. ***Id.***, p. 25:13 – 28:9.

oral deposition of Lilian Jackson, p. 71:7-16. This is only logically as, any potential buyer who intended to use the property as an irrigated farm would be required to assume the substantial financial burden of improving the land and returning it to a farmable condition after their purchase. This undisputed fact caused Dunford to conclude it was not economically feasible for a buyer to undertake the cost of developing the 160 acre Jackson parcel into an irrigated farm. ***See*** Oral Deposition of Zach Moore, p. 48:12-17. This opinion is confirmed by the testimony of Jeremiah Clark who is currently leasing a larger 450 acre parcel of which the Jackson property is included.[2] As noted by Mr. Clark, due to the size of the Jackson parcel, it would not have been economically feasible to undertake the considerable capital expense of improving the property. ***See*** Affidavit of Jeremiah Clark, ¶4. This evidence establishes the lack of any buyer willing to purchase the Jackson property for the $272,000 they contend should have represented its appraised value. It must be kept in mind, an appraisal is simply an opinion of value. It does not mean potential buyers actually existed. Absent evidence establishing the existence a buyer who would have agreed to pay nearly $272,000.00 for the Jacksons' allotment in its unimproved condition, the plaintiffs cannot establish a causal connection between the opinion of value contained in the Dunford appraisal as opposed to the opinion of value reached by their own appraiser whom they hired in connection with this litigation.

2 The appraisal assignment Dunford received from the BIA required him to only consider the individual allotment by itself. Dunford was not allowed to take into consideration the parcels that surrounded the 160 acre parcel. *See* oral deposition of Phil Graf, p. 59:13-60:3. In other words, Dunford could not consider the surrounding parcels that were eventually leased as a package to Jeremiah Clark.

DATED this 6 day of December 2010.

ANDERSON, JULIAN & HULL LLP

By [signature]
Phillip J. Collaer, Of the Firm
Attorneys for Defendants, J.W. Dunford and Associates, Joseph William Dunford and Zachary Moore

CERTIFICATE OF MAILING

I HEREBY CERTIFY that on this 6 day of December, 2010, I served a true and correct copy of the foregoing by delivering the same to each of the following attorneys of record, by the method indicated below, addressed as follows:

| | |
|---|---|
| Dwight E. Baker<br>Jonathan W. Harris<br>BAKER & HARRIS<br>266 West Bridge Street<br>Blackfoot, Idaho 83221<br>Telephone: (208) 785-2310<br>Facsimile: (208) 785-6749<br>*Attorneys for Plaintiffs* | ☐ U.S. Mail, postage prepaid<br>☐ Hand-Delivered<br>☐ Overnight Mail<br>☐ Facsimile<br>☒ Electronic Delivery |
| Robert C. Grisham<br>U.S. Attorney's Office<br>800 Park Blvd, Suite 600<br>Boise, ID 83712-9903<br>*Attorneys for United States of America* | ☐ U.S. Mail, postage prepaid<br>☐ Hand-Delivered<br>☐ Overnight Mail<br>☐ Facsimile 334-1414<br>☒ Electronic Delivery |

Phillip J. Collaer